## COUNTY OF ERIE v. COMMONWEALTH.

127  197
150  154
127  197
165   42
127    197
34 SC ²227

ERROR TO THE COURT OF COMMON PLEAS OF ERIE COUNTY.

Argued May 1, 1889—Decided June 4, 1889.
[To be reported.]

1. The duty to keep a public highway in repair, devolves, at common law, upon the township upon which rests the duty of opening and making it; but where the expense of carrying the highway across a river or other considerable stream of water is greater than the township should bear, the act of June 13, 1836, P. L. 555, provides that the county may build the bridge and regulates the manner in which it may be done.

2. But, except in counties where the special act of April 13, 1843, P. L. 221, is in force, the law does not make provision for the care of such bridge after its erection by the county; that duty remains upon the township, and the completed bridge, when opened for public travel, becomes a part of the public highway and passes as such under the care

of the township officers: Commonwealth v. Monroe Co., 2 W. & S. 495, followed; Howe v. Crawford Co., 47 Pa. 361, disapproved.

(a) Road commissioners of a township in Erie county presented a petition setting forth the erection of a county bridge in 1836; that it had been partially destroyed by floods, freshets and ice, and that the county commissioners, although requested so to do, had refused to rebuild and reconstruct it; praying for a mandamus, etc.

3. The act of April 13, 1843, P. L. 221, was not in force in Erie county, and the proceeding, upon the facts of the case, was not under the act of May 5, 1876, P. L. 112, providing that when any county bridge should be destroyed or partially destroyed or swept away by floods, etc., it should be rebuilt by the county, subject to view and inspection as in case of an original erection.

4. As it was not alleged that the bridge had been blown down or swept away by floods, or destroyed by casualty, the question presented was over the duty to make repairs under the act of June 13, 1836, P. L. 555, and as that duty rested upon the township and not upon the county, the petition should be dismissed.

Before Paxson, C. J., Sterrett, Williams, McCollum and Mitchell, JJ.

No. 366 January Term 1889, Sup. Ct.; court below, No. 50 May Term 1887, C. P.

On February 27, 1887, the road commissioners of LeBœuff township presented a petition in the name of the commonwealth setting forth that in 1836 proceedings were had in due conformity with the law, by which it was established that a county bridge was necessary over French creek at the crossing of the road from Waterford to Union; that said bridge had been duly constructed by the then county commissioners, and had been maintained ever since, the repairs in recent years having been made by the township; " that said bridge had been partially destroyed by floods, freshets and ice so far undermining one of the piers thereof as to make it necessary that the same should be immediately rebuilt; " that the petitioners had called upon the commissioners of Erie county to rebuild and reconstruct said bridge, so that it would be fit and safe for public travel, but they had refused so to do; praying the court to grant a rule on said commissioners to show cause why a man-' damus should not issue, etc.

To the rule granted, the commissioners of Erie county answered that they had no knowledge that the bridge in question

had ever been entered as a county bridge, and denied "that said bridge has been partially destroyed by floods, freshets and ice so far undermining one of the piers thereof as to make it necessary that the same shall be immediately rebuilt;" averring that " whatever damage it has suffered has been the natural wear and tear from constant use and the gradual wearing of the stream against its piers, and is not within the meaning of the act requiring county bridges to be reconstructed by the commissioners of the county."

Testimony having been taken and filed by *Mr. Ira E. Briggs*, appointed examiner for the purpose, an agreement was entered into by which trial by jury was dispensed with and the cause submitted to the decision of the court upon the testimony filed.

On August 8, 1888, the court, GUNNISON, P. J., filed a decision, which was as follows:

### FINDINGS OF FACT.

The testimony disclosed the following material facts:

Upon the petition of a number of the inhabitants of LeBœuff township, representing that a bridge was much needed over French creek in said township, where the public highway from Waterford to Union Mills, crossed said creek, and that the erection of said bridge would require more expense than it was reasonable the said township should bear, the Court of Quarter Sessions, on May 5, 1836, ordered a view, under the provisions of § 21, act of April 6, 1802, 3 Sm. L. 520, which provided the manner of establishing and erecting county bridges.

No record of the report of the viewers then appointed, or of the action of the Court of Quarter Sessions, grand jury, or county commissioners thereon, can be found. But, that upon the report of the viewers it appeared to the court, grand jury and commissioners, that such bridge was necessary, and would be too expensive for the township to erect, and that it was thereupon established as a county bridge, appears from the subsequent records and papers which were offered in evidence. By them it appears that on December 28, 1836, the county commissioners contracted with William Boardman and Calvin Avery to erect the bridge for $870. On October 17, 1837, the commissioners presented their petition to the Court of Quarter

Sessions, setting forth the prior proceedings, and that the bridge had been completed agreeably to the contract, and praying for the appointment of six fit persons to inspect the said bridge, etc. ; whereupon the court appointed six fit persons as prayed for, five of whom reported November 6, 1837, that they had inspected the bridge and the workmanship thereof ; that it had been built and finished according to the agreement, and was a permanent and substantial structure. It must be taken therefore as proved that the bridge was a county bridge.

The testimony as to the present condition of the bridge is somewhat conflicting. But from it all I find that the abutments of the bridge, especially the east one, are in a dangerous condition ; that this condition is partly the result of natural wear and tear, and partly the result of the action of the water and the floods and ice ; and that they have become partially undermined by the current of the stream, the bed of which has become lower, exposing the wood foundation under the stone abutments at low stages of water to the action of the atmosphere, causing it to become decayed to such an extent as to cause the settling of the abutments. This settling has been gradual for a few years past and the abutments are now, partly in consequence of the settling and partly from the action of the frost, floods and ice, cracked, bulged out towards the stream, with some of the stone washed out, and in need of thorough repairs. I cannot find, however, that the particular damage done by floods and ice amounts to the destruction, partial destruction, or blowing down of the bridge, within the meaning of the act of May 5, 1876, P. L. 112. Floods and ice contributed, with the other causes I have named, to gradually affect the abutments and render the repairs necessary.

## CONCLUSIONS OF LAW.

Having found as a matter of fact that the damage to the bridge caused by floods and ice did not amount to such destruction or partial destruction as is contemplated by the act of 1876, requiring in certain cases the county to reconstruct or rebuild county bridges, it follows that the provisions of that act do not apply to this case.

The question then is, is there any liability imposed upon the county to repair, aside from that imposed by that act ?

By the act of April 13, 1843, P. L. 221, it was enacted, " That, from and after the passage of this act, it shall be the duty of the county commissioners of the several counties of this commonwealth to repair all bridges erected by the county, and to pay such expenses out of the treasury in the usual manner," excepting as to certain counties named. By the act of April 6, 1854, P. L. 295, the exemptions of the counties mentioned in the act of 1843 from liability to repair county bridges, was extended to the county of Erie. Each of these acts is entitled : " An act supplementary to an act entitled ' an act relating to roads, highways and bridges,' " which is the title of the act of June 13th.

The Supreme Court in construing an act repealing the act of 1843 so far as it extended to Crawford county, in Howe v. Crawford County, 47 Pa. 361, held that the act of 1843 imposed upon the county the duty of repairing only such bridges as were erected under the act of 1836, to which it was a supplement ; that the repeal of that act as to Crawford county relieved it from the duty of repairing such bridges only; that the bridge in question in that case having been built in 1820, under the provisions of the act of 1802, the duty of repairing it was imposed upon the county by the judicial proceedings of 1820, by which it was established as a county bridge, " and it was a continuing duty the repeal of the act of 1843 in nowise affected."

It was strenuously argued by the counsel for the defendants, upon the authority of Commonwealth v. Monroe County, 2 W. & S. 495, in which the Supreme Court held that "when a county bridge has been once legally built, such ordinary repairs as are necessary to preserve it fit for use are to be made by the supervisors of the township, as in the case of roads," and expressly concurred in the opinion of the court below, " that the county only erects bridges when the township is unable to do it, and in no case repairs bridges after they are erected," that the county is not liable for any repairs to any county bridge excepting such as are within the meaning of the act of 1876.

If the decision in Howe v. Crawford County had not been since rendered, I would be inclined to agree with this construction. But as I understand that case, which is a later utterance of the Supreme Court upon the question, [the liability here

depends upon whether this bridge was originally erected under the act of 1802 or the act of 1836. If under the former, the county is liable ; if under the latter, it is not liable.] [2]

In the case of Howe v. Crawford County, the bridge was clearly erected under the act of 1802. In this, the proceedings were begun prior to the passage of the act of June 13, 1836, P. L. 555, and completed after it went into effect, which was September 1, 1836. The order for the original view was made May 5, 1836. There is a hiatus in the record from that date until October 17, 1837, when on the petition of the county commissioners six fit persons were appointed to inspect the bridge and workmanship thereof, and make report, etc. There is no record of the report of the viewers appointed May 5, 1836, nor of the action of the court, grand jury and commismissioners thereon. In the absence of such record, it must be presumed that the proceedings were regular and timely : Omnia præsumuntur rite esse acta. In due course, the report should have been made to the next term of the court following the appointment of viewers, and the action of the court, grand jury and commissioners thereon taken at the same time. The next term began on the first Monday in August, 1836, which was prior to the time prescribed for the act of 1836 to take effect. If the report of viewers was then made, and it then appeared to the court, grand jury and commissioners that such bridge was necessary, and would be too expensive for the township to erect, the act provided that it should be entered on record ; and its character as a county bridge then became established.

The proceedings in 1837 were supplementary to the fixing of this character upon it. That such was the action is apparent from the subsequent proceedings, although the record of it is missing. That it was had at that time, before the act of 1836 took effect, must be presumed.

It may well be questioned whether, if the report of the viewers, with the finding upon it, was had after September 1, 1836, the proceedings would not be considered as under the act of 1802, the original view having been ordered under that act. The repealing clause of the act of 1836 is as follows : " All laws hereby altered or supplied so far as are inconsistent with this act are hereby repealed." But the act of 1802 was not

inconsistent with the act of 1836 in respect of the proceedings to be taken in constructing county bridges. In opening roads there was a change in the manner prescribed; but in respect to county bridges the provisions in the two acts were substantially identical, so that the act of 1802 was not expressly repealed in that respect, nor was it by implication. "When a late statute is repugnant to a former one only in part, it repeals the former one only so far as the repugnancy extends, and leaves all the remainder in force:" In re Contested Election of Barber, 86 Pa. 392; see also Erie v. Bootz, 72 Pa. 196; The Hickory Tree Road, 43 Pa. 139; Spring Garden Road, 43 Pa. 144; Uwchlan Township Road, 30 Pa. 156.

[Being of the opinion that the bridge was established as a county bridge under the act of 1802, it follows under the authority of Howe v. Crawford County, that the duty of repairing it devolves on the county of Erie.] [3]

As to the extent of the repair necessary, the testimony is conflicting. Whether the abutments should be taken down and rebuilt, or whether they can be made safe without rebuilding, is not clear. It seems to me better that the commissioners should exercise their discretion after a thorough examination, than that they be explicitly directed by mandamus to rebuild them as is prayed by the plaintiff in its petition.

The court is requested by the plaintiffs to find as matter of law, that if the bridge in question is a county bridge, it was and is the duty of the county commissioners to keep the said bridge in safe condition and good repair, at the expense of the county of Erie.

Answer: Having found the bridge to be a county bridge under the act of 1802, the point is affirmed.[1]

### DECREE.

And now Aug. 6, 1888, I find for the plaintiff and against the defendants. The prothonotary is directed to give notice of this finding to the parties or their attorneys, and if no exceptions are filed hereto within 30 days after service of such notice, let judgment be entered by the prothonotary hereon, that a peremptory mandamus be awarded against the county commissioners of Erie county, commanding them to repair the bridge in the plaintiffs' petition mentioned.

Exceptions to the decision filed in behalf of the defendants having been dismissed, and judgment entered, the defendants took this writ, assigning as error:

1. The answer to the plaintiffs' point.[1]

2, 3. The conclusions of law embraced in [ ] [2] [3]

*Mr. Clark Olds*, for the plaintiffs in error:

1. The proceedings to have this bridge constructed were commenced May 5, 1836, under § 21, act of April 6, 1802, 3 Sm. L. 520, at which time a view was granted. The record does not show the subsequent action, but the presumption is the return was made to August Term 1836, and received the concurrence of the court, the grand jury and commissioners, as required by the act. But the act of 1802 was followed by the act of June 13, 1836, P. L. 555, which took effect September 1, 1836, after the return of the order to view. As the subsequent proceedings show, the bridge was completed under the act of 1836, and the court erred when finding that the bridge in question took its character as a county bridge under the act of 1802. It could not have such character, until all the requirements of the act of 1802, or those of the act of 1836, which supplemented the act of 1802, were complied with.

2. The provisions of the two acts are almost identical. One act is a re-enactment of the other. There is not a word in either act relating to the maintenance of county bridges by the counties which constructed them. How then can it be said that the county must repair all bridges built under the act of 1802, and not those built under the act of 1836? In Commonwealth v. Monroe County, 2 W. & S. 495, it was held: "The power to repair bridges is by the two latest acts of 1802 and 1836 given to the supervisors, as well as to erect bridges of a minor class, over small creeks and rivulets and deep gullies . . . . When a county bridge has been once legally built, such ordinary repairs as are necessary to preserve it fit for use are to be made by the supervisors of townships, as in the case of roads."

3. The court below decided the case at bar upon the dictum of the later case of Howe v. Crawford County, for the reason that the case was a later utterance of this court. But the court in that case went further than they were required to go in order to decide the question raised. That the legislature

did not intend county bridges to be repaired at the expense of the county, is evident from the subsequent legislation upon the subject. The act of April 13, 1843, P. L. 221, imposed the duty to repair upon the counties, with certain exceptions. The act of March 11, 1844, P. L. 86, extended the exception to other counties. The act of April 6, 1854, P. L. 295, extended the exception to Erie county. Then came the act of May 5, 1876, P. L. 112, requiring counties to rebuild and reconstruct bridges destroyed or partially destroyed by casualty. Wherefore, if by the act of 1802, the several counties were obliged to repair and reconstruct county bridges, they must also be obliged to do so under the act of 1836, and in such case, all the subsequent legislation upon the subject is superfluous. If the bridge in question has become so dilapidated that a new structure is necessary, the petitioners have mistaken their remedy, and they must proceed under § 35, act of June 13, 1836.

*Mr. Theo. A. Lamb* (with him *Mr. J. W. Sproul*), for the defendants in error :·

1. The act of April 6, 1802, 3 Sm. L. 512, repealed all prior laws. In §§ 20 and 21, the legislature clearly distinguishes between bridges to be kept in repair by townships, and those to be kept up by the county. In bridges over small creeks and rivulets, the supervisors are required both to build and maintain them: but there is no requirement that supervisors shall repair bridges erected by the county, and thus no liability on their part to do so. We concede that the duty to repair is not specifically imposed by this act upon counties, but it would seem to follow ex necessitate from their obligation to erect, and thus thought this court, as shown in the case of Howe v. Crawford Co., 47 Pa. 381. Moreover, this seems to have been the construction placed upon the act originally by the county authorities: Smithfield Creek Bridge, 6 Wh. 362, a construction sanctioned impliedly by § 23, act of April 15, 1834, P. L. 541, directing county commissioners to designate in their published annual statements, " all sums expended . . . . . in the repairs of old or the erection of new bridges," etc.

2. Howe v. Crawford Co., 47 Pa. 361, decides that the act of April 13, 1843, P. L. 221, has no relation to bridges built under the act of 1802, and its title plainly shows this. It

matters not, then, that the act of April 6, 1854, P. L, 295, extended the exemptions of the act of 1843 to Erie county. It does not reach this case. The bridge in question was made a county bridge in 1836. In the language of WOODWARD, C. J.: "How has the obligation to maintain it, been taken off the shoulders of the commissioners?" In our case, the bridge was built by the county, and as the act imposes the duty of repair on no one else, it falls upon the county: Meadville v. Erie Canal Co., 18 Pa. 66.

3. Morever, the act of April 13, 1843, P. L. 214, providing for the election of road commissioners in Erie county, in its §§ 20 and 27, clearly divested the road commissioners of the township of all jurisdiction in relation to the bridge in question. They have no power over it, nor right to repair or rebuild it. For them to expend money upon it, would be to misappropriate, and it follows necessarily that if it is not the duty of the county commissioners to take charge of the bridge in question, there is no one liable for its dangerous condition. It cannot be presumed that such a result as this was intended.

*Mr. Clark Olds*, in reply:

The act of April 13, 1843, P. L. 218, under §§ 20 and 27 of which it is claimed the road commissioners of Erie county were divested of the power to repair county bridges, was modified by the acts of April 15, 1857, P. L. 205, and May 16, 1857, P. L. 550; so that, as the law now stands, the road commissioners are authorized to make repairs to all bridges whenever necessary and to raise the money to defray the expense by a special road tax, if necessary.

OPINION, MR. JUSTICE WILLIAMS:

The duty to make repairs in a highway rests at common law on the township or other subdivision of the state on which the duty of opening and making the highway rests. The local road officers represent the district for which they are chosen, and must discharge the duty of opening and repairing the highways within it. Until the law-making power intervenes and separates the duty to open from that to repair, and imposes each upon different bodies or officers, the duty is one and rests on the officers of the township in which the road lies.

It will sometimes happen, however, that the line of a road crosses a river or other considerable stream of water and that the expense of carrying the road across the water by a bridge is greater than the township is able to bear. In that case, the law provides that the county shall come to the aid of the township and build the bridge. The act of June 13, 1836, regulates the manner in which this may be done. The facts must be made known to the Court of Quarter Sessions of the proper county by a petition. Viewers are then appointed by the court to examine into and report upon the facts stated in the petition. The report of the viewers must be submitted to the grand jury for its approval. If this is obtained, the court and the county commissioners must also concur, before the expenditure of one dollar by the county is permissible. If the bridge is finally determined upon, an estimate of the cost must be made, and the building of the bridge may then be entered upon. After it is completed, it must be inspected by another view to be appointed by the Court of Quarter Sessions, and if they report to the court that the work has been properly done, the money may be safely paid out of the county treasury. The object of this legislation is to relieve the township by imposing a part of its duty under certain prescribed circumstances on the county, and paying the cost of discharging that duty out of the funds of the county which otherwise would not be applicable to such a purpose. But the law does not make provision for its care after its erection. That duty remains on the township, and the finished bridge, when opened for travel, becomes a part of the highway and passes as such under the care of the township officers. The county has no road officers. Its duty is simply to build the bridge, when the township cannot; and, that duty done, it has no further responsibility for its maintenance than for the maintenance of the roadway leading to or from it.

Such was the law in Pennsylvania until the act of 1843, as was clearly shown in Commonwealth v. Monroe County, 2 W. & S. 495. By the act of 1843 the duty of repairing county bridges was placed upon the county, but by the terms of the proviso and by subsequent acts about one half the counties of the state were excepted from its provisions. The county of Erie was taken out from its operation by the act of April 6,

1854, and has since been under the rule that prevailed before the act of 1843 was passed. If this was not so, it is evident that the effect of the act of 1843 was confined to repairs, in the ordinary sense of that word, and could not authorize a rebuilding of the superstructure at the discretion of the county commissioners. This would still require all the formal prerequisites provided by the act of 1836, the petition, view, report, and the action of grand jury, court and county commissioners. The delay consequent upon these proceedings was sometimes found to work great inconvenience to the traveling public and to relieve against it the act of May 5, 1876, was passed. It provided that in all cases where a county bridge had been " blown down, destroyed, or partially destroyed, or swept away by floods, freshets, ice, storm, fire or other casualty," it should be the duty of the county commissioners to rebuild the bridge so blown down, destroyed or swept away, subject, however, to inspection in the same manner as an original construction. As the county of Erie is not under the act of 1843, it is not necessary to inquire particularly into its effects, nor to determine the relative duties of county and township under it.

This proceeding is not under the act of 1876, nor is it alleged that this bridge has been blown down or destroyed by casualty. The question presented is over the duty to make repairs under the provisions of the act of 1836, and we are clearly of opinion that the duty rests on the township and not on the county. The case of Howe v. Crawford County, 47 Pa. 361, on the authority of which the learned judge of the court below ruled this case, is in conflict with the Commonwealth v. Monroe County, supra, and with the rule now laid down. If the condition of the bridge is such as to justify its rebuilding under the act of 1876, it is possible that upon a proper application a mandamus may yet issue. If it is not, but its dilapidation is such that a new bridge must be built, it will be necessary to resort to a proceeding under the act of 1836. If however the question presented is, as we understand it to be, one about liability for ordinary repairs, the townships in the county of Erie are liable, and for that reason this petition should be dismissed.

The decree made in this case is set aside and the record remitted for such further proceedings as may be necessary under the foregoing opinion.