# Pittsburg & West End Passenger Ry. *v.* Point Bridge Co., Appellant.

*Street railway companies—Highways—Bridges—Act of May* 14, 1889.

· A bridge erected for public travel and accommodation by a corporation authorized to demand toll for passage over it, is a highway within the meaning of the act of May 14, 1889, P. L. 211, which authorizes the formation of companies for the purpose of constructing, maintaining and operating a street railway upon any street or highway for public use in the conveyance of passengers by any power other than by locomotive.

*Equity—Jurisdiction—Street railways—Bridge companies.*

A court of equity has jurisdiction of a bill in equity filed by a street railway to compel a bridge company to permit the use of the bridge for the operation of the railway.

Argued May 3, 1894.  Appeal, No. 241, Oct. T., 1893, by defendant, from decree of C. P. No. 2, Allegheny Co., April T., 1892, No. 113, on bill in equity.  Before STERRETT, C. J., GREEN, McCOLLUM, MITCHELL and DEAN, JJ.  Affirmed.

Bill to restrain bridge company from interfering with street railway in operation of cars on bridge, etc.

The case was referred to James S. Young, Esq., as master, who reported in favor of granting the prayers of the bill.

The facts appear by the opinion of the Supreme Court.

The court below entered the following decree :

" First. The exceptions filed by the parties respectively to the master's report are overruled, except the defendant's exception as to the amount of compensation to be paid by the plaintiff to the defendant.

" Second. The Point Bridge Company, the defendant herein, its servants and agents, are hereby restrained and enjoined, until the further order of this court, from any and all interference with the Pittsburg & West End Passenger Railway Company, and its servants and agents, in the preparation of

and use of said bridge for the operation of its cars by electricity over and across the same; but such preparation and the use of the bridge shall for the present be as follows: It is ordered that the cars shall not run at a greater rate of speed than four miles per hour while upon said bridge, and that there shall not be more than two cars upon the same span of said bridge at any one time.

" Third. The wires and other apparatus for applying electricity as the motive power in propelling said cars, shall be erected and constructed upon and across said bridge as shown in the testimony of S. L. Tone, one of the witnesses examined before the master, and the plan produced by him and now filed in this case, it being the same plan recommended by the master and to which no exceptions have been filed by the defendant. That in doing the work contemplated under the provisions of paragraphs two, three and four of this decree, the ordinary travel over the bridge shall be allowed and accommodated to the fullest extent reasonably possible.

" Fourth. While the Point Bridge Company is restrained from interfering with the Pittsburg & West End Passenger Railway Company in the use of the bridge and the rails as at present laid, it is ordered that the said railway company, at its own expense and within six months from the date, with the consent of the bridge company, lay down, over and across said bridge, girder rails in lieu and place of the rails now on said bridge, and properly plank said bridge to suit said rails. The rails shall be laid and bridge planked under the supervision and care of the engineer of the railway company and also of the bridge company, and the said work shall be done when commenced as rapidly as it can be reasonably done, and with no unnecessary hindrance to travel upon and over said bridge.

" Fifth. That the Pittsburg & West End Passenger Railway Company shall pay to the Point Bridge Company for its use of said bridge the sum of eight thousand ($8,000) dollars per year, payable monthly. This rate shall not control for the use of said bridge for a longer period than five years from this date.

" Sixth. That the Pittsburg & West End Passenger Railway Company shall pay the costs and expenses of stringing the wires across said bridge and of taking up the old rails and lay-

ing the girder rails and planking the bridge in connection there-
with, and shall pay the costs in this suit to date.

" Seventh. Either party hereto at any time may, during the
continuance of this order, make application to the court, and,
for proper cause, may move a modification of this decree or
such other and further order in this case as may, under the
circumstances then existing, be proper.

" Eighth. Before issuance of the injunction, the plaintiff
company shall file a bond in the penal sum of ten thousand
($10,000) dollars with sufficient sureties, to be approved by
the court, conditioned to indemnify the defendant company
for all damages that may be sustained . by reason of such in-
junction."

*Errors assigned* were (1–2) in assuming jurisdiction; (3)
decree, quoting it.

*A. M. Brown* and *P. C. Knox, James H. Reed* and *J. B.
Brown* with them, for appellant.—The title of the act of 1889
does not give notice of the provisions in § 20, intended to re-
vive or validate void charters, granted ten years before its
enactment: Union Pass. Ry. Co.'s Ap., 81* Pa. 91; Rogers v.
Imp. Co., 109 Pa. 109.

If however § 20 of the act of 1889 is a valid enactment, its
utmost effect could only be to protect and preserve property
rights of the company acquired by gift, conveyance, etc., dur-
ing the period of its disability and prior to its incorporation.
If legally incorporated under the act of 1889, it became a cor-
poration only under that act, and not under the void act of 1879.

The municipality could not, by ordinance or otherwise, em-
power plaintiff to occupy and use the bridge and release it
(plaintiff) from its liability to make compensation. Any act
of the municipal authorities to that end would be clearly ultra
vires: Snow v. Twp., 78 Pa. 181; Phillips v. R. R., 78 Pa. 177.

The necessity which will permit one corporation to take the
franchise of another must be absolute: Pittsburg Junction R.
R. Co.'s Ap., 122 Pa. 511; Sharon Ry. Co.'s Ap., 122 Pa. 533;
Penna. R. R. Co.'s Ap., 93 Pa. 150; act of May 14, 1889, § 17,
P. L. 211.

All acts of incorporation and acts extending corporate priv-
ileges are to be construed most strongly against companies

setting them up, and what is not unequivocally granted must
be taken to be withheld: Packer v. R. R., 19 Pa. 211; Com. v.
Erie & N. E. R. R., 27 Pa. 339; Cake v. R. R., 87 Pa. 307;
Penna. R. R. Co.'s Ap., 93 Pa. 150.

A court of equity has no jurisdiction: Sharon Ry. Co.'s Ap.,
122 Pa. 533; Elliott's Roads and Streets, 23, 24; Ryves v.
Wellington, 9 Beav. 579.

*D. T. Watson, Johns McCleave* with him, for appellee.—
The use of a highway by the street passenger railway for the
erection of the necessary poles, etc., to sustain the wires which
conduct the electricity to the cars, is not a taking of private
property for public use, and is not an additional burden on the
easement which the property holder granted to the public when
the street was dedicated: Covington Bridge Co. v. R. R., 50
A. & E. R. R. Cas. 395; Lockhart v. Ry., 139 Pa. 419; Raf-
ferty v. Ry., 147 Pa. 592; Taggart v. Ry., 7 Ry. & Corp. L. J.
385; Louisville Bagging Co. v. Ry., cited in Booth's St. Ry.
§ 67; Pelton v. R. R., 22 W. L. B. 67; DuBois Traction Co.
v. Ry., 10 Pa. C. C. R. 404; Keasbey on Electric Wires, 15, 16.

The bridge is a public highway: Erie Co. v. Com., 127 Pa.
207; R. R. v. Com'r, 4 Neb. 456; Com. v. Bridge Co., 66 Mass.
244; Rapho v. Moore, 68 Pa. 408; Twp. v. Perry Co., 78 Pa.
459; Monongahela Bridge Co. v. R. R., 114 Pa. 485; Erie Co.
v. Com., 127 Pa. 207; Washer v. Bullitt Co., 110 U. S. 564;
Chicago v. McGinn, 51 Ill. 272.

The state, in the general passenger railway act of 1889, au-
thorized street passenger railways incorporated under it to use
and cross the highways and bridges of the state within the de-
fined route of each railway, using electricity as a motive pow-
er: Monongahela Bridge Co. v. Ry., 114 Pa. 485; Penna. R.
R. v. Ry., 152 Pa. 127.

The authority to change from horse to electricity as a motive
power is probably inherent in the street railway company with-
out express legislative sanction: Reeves v. Traction Co., 152
Pa. 162; Williams v. Ry., 41 Fed. R. 556; Roake v. Tel. &
Tel. Co., 41 N. J. Eq. 35; Phila. & Trenton R. R. Case, 6
Whart. 25; Scott and Jarmagin on Telegraphs, § 34; High,
Inj. § 762; McCormick v. District of Columbia, 4 Mackey, 396;
Booth's St. Ry., § 83; Charles River Bridge v. Warren Bridge

Co., 11 Pet. 547 ; Stone v. Mississippi, 101 U. S. 814 ; Provident Institution for Savings' Case, 91 Cush. 604 ; Morawetz, Corp. § 1062 ; Mott v. R. R., 30 Pa. 9.

Any new mode of transportation which is consistent with the use by the general public of the bridge or street is within the dedication of the bridge or street : Lockhart v. Ry., 139 Pa. 419 ; Rafferty v. Traction Ry., 147 Pa. 592 ; Taggart v. Ry., 7 Ry. & Corp. L. J. 385 ; Williams v. Ry., 41 Fed. R. 556 ; Louisville Bagging Co. v. Ry., cited in Booth's St. Ry. § 67 ; Felton v. R. R., 22 W. L. B. 67 ; Du Bois Traction Co. v. Ry., 10 Pa. C. C. R. 404 ; Dist. Atty. v. West Chester, 9 Pa. C. C. R. 546 ; Booth, St. Ry. § 83.

If, however, the court should think that the right granted to the passenger railway company by the general passenger railway act of 1889 is the right to take and condemn, then the railway company would be liable for all damages the bridge company would suffer, and there is ample provision under the constitution of the state and the general laws affording an adequate remedy to the bridge company : Duncan v. Ry., 94 Pa. 435 ; R. R. v. Duncan, 111 Pa. 352 ; Chester Co. v. Brower, 117 Pa. 647 ; Delaware Co.'s Ap., 119 Pa. 159 ; O'Brien v. Ry., 119 Pa. 191.

Section 20 of the street passenger railway act of 1889, P. L. 217, is not in conflict with article 3 of the constitution, owing either to defect in the title or because it is local or special law.

The charter is not liable to collateral attack   West. Pa. R. R. Appeal, 104 Pa. 399.

OPINION BY MR. JUSTICE MCCOLLUM, Nov. 13, 1894 :

The Point Bridge Company was incorporated under the general corporation act of 1874 for the purpose of erecting, constructing and maintaining a toll bridge and approaches thereto for public travel and accommodation " from a point near the junction of the Allegheny and Monongahela river, across the Monongahela river to a point at or near the Lorenz Glass Works." The bridge it was thus authorized to build and maintain constituted, when it was opened to public travel in May, 1877, a portion of the highway with which it was connected. It was, by the charter under which it was erected, dedicated to a public use, subject only to the right of the company to exact

reasonable tolls for such use : Monongahela Bridge Company
v. The Pittsburg and Birmingham Railway Company, 114 Pa.
478 ; Rapho v. Moore, 68 Pa. 404 ; Penn Township v. Perry
County, 78 Pa. 457 ; Erie County v. The Commonwealth, 127
Pa. 197 ; Commonwealth v. Central Bridge Co., 12 Cushing,
244, and Washer v. Bullitt County, 110 U. S. 564. Citations
in this line might be multiplied indefinitely, but it is believed
that the charter and the cases already referred to, justify the
appellee's contention that the Point Bridge is a public high-
way. Aside from the right of the company to demand and re-
ceive reasonable tolls from the traveling public for the use of
it for the purpose for which it was erected, it does not differ
from the ordinary highway constructed and maintained by the
inhabitants of the district through which it passes. But the
right to exact such tolls does not carry with it the power to
prohibit such use of it by the public as is reasonably consistent
with such purpose.

The Pittsburg & West End Passenger Railway Company
was incorporated on the 27th of March, 1879, under the act of
March 19, 1879, P. L. 9. Its route was from the corner of Lib-
erty and Fifth avenues, and upon Liberty avenue, Fifth street,
Penn avenue, Water street, Point Bridge, Carson, Main and
Walnut streets to the Washington turnpike road. It proceeded
·at once to construct its railway on this route, and, finding tracks
upon the bridge adapted to the passage of cars over it, con-
nected its tracks with them. It opened its railway for public
travel on the 4th of July, 1879, operated the same by horse
power and paid tolls to the bridge company until this conten-
tion arose in December, 1891.

The act under which the railway company was incorporated
having been declared unconstitutional in Weinman v. Passen-
ger Ry. Co., 118 Pa. 192, the company accepted the provisions
of the Passenger Railway Act of 14th May, 1889, P. L. 211,
and received new letters patent. By this acceptance the com-
pany became entitled to all the privileges, franchises and pow-
ers conferred by the later act upon corporations created under
it. What are the powers, privileges and franchises thus con-
ferred, so far as the same are applicable to this controversy ?
The act authorizes the formation of companies for the purpose
of constructing, maintaining and operating a street railway upon

any street or highway for public use in the conveyance of passengers by any power other than by locomotive. Do the words " any street or highway," as used in this act, exclude bridges ?

We have already seen that a bridge erected for public travel and accommodation is a public highway whether built and maintained by the inhabitants of the district or by a corporation authorized to demand tolls for passage over it. Surely it would be a narrow construction of these words which would exclude a bridge and thereby make it a terminus of the railway. If the bridges across the Schuylkill river in Philadelphia and the bridges across the Allegheny and Monongahela rivers at Pittsburg are not highways within the meaning of the act, it signally fails to provide the facilities which are required for the public travel and accommodation. In all the cities and populous districts of the commonwealth where street passenger railways are necessary for easy access to and convenient travel in them there are bridges to be crossed, some of which are maintained by the municipality or district, and some by corporations chartered for the purpose of erecting and maintaining them for public use. In view of these known conditions the natural and reasonable construction of the act of 1889 is that the streets or highways mentioned therein include the bridges connecting with and constituting portions of them. When the Pittsburg & West End Passenger Railway Company accepted the provisions of the act and acquired new letters patent, it was and for ten years previous thereto had been operating its railway by horse power on the route already described. The Point Bridge Company made no objection to the passage over its bridge of the cars of the railway company. The tolls were adjusted by an arrangement between the companies which was satisfactory to both. This arrangement continued until the railway company proposed to operate its road by electricity. It was the proposed change in the method of operating it that led to this litigation in which the bridge company contends that the railway company has no right to use the bridge in moving its cars over its established route. The consent of the local authorities has been duly given to the latter to operate its railway on that route and in the manner proposed. It has all the powers, franchises and privileges granted by the act of 1889 to street passenger railway companies. The title

of the act is broad enough to authorize the incorporation of companies organized under the unconstitutional act of 1879. The use of the bridge in the manner proposed does not constitute a taking of or an injury to the property of the bridge company, in the exercise of the power of eminent domain. It is a use which is reasonably consistent with the purpose for which the bridge was erected, and is necessary for public travel and accommodation. We conclude therefore that under the legislation and with the municipal consent to which we have referred, the railway company has the right to operate its line across Point Bridge "by any power other than by locomotive," in such manner and on such terms as will protect the rights of the bridge company and the traveling public. The learned court below, after a careful inquiry into the facts and circumstances affecting the issue raised by the bill and answer, entered a decree which appears to be reasonable and just. It is a decree which carefully guards the rights of the bridge company, which properly regulates the use of the bridge by the railway company, and exacts from the latter the payment to the former of a toll rate, the adequacy of which is not questioned.

We have not overlooked the contention which denies to a court of equity, jurisdiction of the matter complained of, but we cannot assent to it. On the contrary we think the railway company applied to the proper tribunal for the relief sought.

The specifications of error are overruled. Decree affirmed and appeal dismissed at the costs of the appellant.