## Luzerne County v. Department of Highways et al.

R. *Lawrence Coughlin* and *Donald S. Mills*, for plaintiff.

*T. McKeen Chidsey*, Attorney General, *Harry F. Stambaugh*, special counsel, and *Phil H. Lewis*, Deputy Attorney General, for defendants.

SMITH, J., November 27, 1950.—We have before us preliminary objections in the nature of a demurrer to a complaint in an action of mandamus. The question presented by the pleadings is whether a certain bridge in Luzerne County crossing the Susquehanna River and connecting a borough street with a township road was, on January 25, 1944, a county highway.

The determination of this issue involves the interpretation of the Act of May 28, 1943, P. L. 796, in force January 25, 1944, entitled "An Act establishing as state highways, certain county highways and requiring their construction, repair and maintenance as such".[1]

---

[1] The pertinent provisions of the Act of May 28, 1943, P. L. 796, are as follows:

"Section 1. That where any county is responsible for the construction or maintenance of any highway, such highway shall, if and when the county commissioners consent thereto by resolution, a copy of which shall be filed in the office of the clerk of the courts of the proper county and with the Department of Highways, be adopted by the Commonwealth as a state highway and shall thereafter be constructed, repaired and maintained at the expense of the Commonwealth as State highways are now constructed, repaired and maintained under the provisions of existing laws: Provided, That no highway shall be taken over by the Commonwealth under the provisions of this act if a contract for the improvement thereof has been entered into between a contractor and the Commonwealth or local authorities, or both, until such contract shall have been completed."

*The Complaint*

A summary of the controlling facts as set forth in plaintiff's complaint is as follows:

On January 25, 1944, Luzerne County, plaintiff herein, a third class county, was the owner of and responsible for the construction, maintenance and repair of a certain steel truss bridge across the Susquehanna River between the Borough of Plymouth and the Township of Hanover, known as the Lower Plymouth or Breslau Bridge.

This bridge at its western, or borough end, connects with Hanover Street, a borough street, approximately 300 feet in length. The western end of this street in turn connects with State highway route no. 4. The bridge at its eastern, or township end, connects with Fellows Avenue, a township road. This road in turn connects with State highway route no. 40033, approximately 3,000 feet east of the eastern end of the bridge. The bridge, although not a part of any State highway, is a main avenue of egress and ingress from and to the two State highway routes hereinabove referred to.

On January 25, 1944, the County Commissioners of Luzerne County passed a resolution, the purport of which was to shift the responsibility for the maintenance of the aforesaid bridge from Luzerne County to the Department of Highways of the Commonwealth of Pennsylvania.[2] This resolution, predicated upon the assumption that the bridge was a county highway, declared the same and its approaches to be a State highway in accordance with the provisions of the Act of 1943, supra.

A certified copy of the aforesaid resolution was sent to the Department of Highways under date of January

---

[2] In certain paragraphs of the complaint the date of this resolution is inadvertently given as January 25, 1945.

29, 1944.[3] Thereupon, the then Secretary of Highways by letter dated March 2, 1944, advised the county commissioners that the bridge and its immediate approaches did not, in his opinion, constitute a highway within the meaning of the Act of 1943, supra, and that, for this reason, the department refused to give effect to the resolution and disclaimed any responsibility for the reconstruction or future maintenance of the bridge.

When the resolution was passed the bridge in question was urgently in need of repairs and unsafe for public travel. In fact at that time or shortly thereafter it was closed entirely to the public.

On October 30, 1944, Luzerne County, acting through its board of commissioners, and the Commonwealth of Pennsylvania, acting through its Department of Highways, entered into a contract, a copy of which is attached as exhibit A to the complaint. Therein, Luzerne County agreed to "take such measures as may be necessary to repair the bridge . . ., so that the same may be open to the traveling public". Further, therein it was agreed that the ultimate responsibility for the construction, repair and maintenance of the bridge, "in light of the aforesaid resolution of the Board of County Commissioners of Luzerne County," should be thereafter determined in legal proceedings to be instituted by the county. Paragraph 5 of the contract provides:

"In the event legal proceedings instituted are finally determined in favor of the County, the Commonwealth shall reimburse the County for the expenses of the repair and maintenance of said bridge from the 25th day of January, 1944, after receipts of a statement of

---

[3] There is no specific averment in plaintiff's complaint that a copy of this resolution was filed in the office of the Clerk of the Courts of Luzerne County as provided by the Act of 1943, supra. However, this question was not raised in defendants' preliminary objections and, therefore, will not be considered by this court.

cost which shall be subject to audit within sixty days by the Commonwealth."

And paragraph 6 thereof provides:

"In the event legal proceedings instituted are finally determined in favor of the Commonwealth it shall have no obligation to reimburse the County for the cost of making any expenditures on said bridge and the status of said bridge shall be the same as if the resolution of the Board of County Commissioners hereinbefore set forth had never been adopted."

Pursuant to the contract the Luzerne County Commissioners repaired the bridge and in so doing expended the sum of $723,662.64.

The complaint in mandamus was thereafter filed. Therein Luzerne County prays "for the entry of a judgment against the Department of Highways commanding it to take over the said bridge as a State Highway as of January 25, 1944, to make allocations and issue requisitions for the repairs and maintenance of said bridge since January 25, 1944, including the payment of $723,662.64, with interest to the County of Luzerne, in accordance with the contract entered into with the County of Luzerne, and commanding the Department of the Auditor General and the Treasury Department to audit such requisitions and pay the same according to law, as well as all legal costs."

### The Demurrer

Defendants in their preliminary objections aver that the bridge in question is not a county highway within the meaning and purview of the Act of 1943, supra, in that as appears from the complaint, the bridge is not located on a county highway since it connects at one end with a borough street and at the other end with a township road.

Further, therein, defendants aver that "9. Since the inception of the State highway system under the provi-

sions of the so-called Sproul Highway Act of 1911, bridges which were the responsibility of political subdivisions have not become the responsibility of the Commonwealth in the absence of specific legislative expression providing for such transfer, and the Act of Assembly invoked by the County Commissioners of Luzerne County contains no expression of legislative intent, which either directly or indirectly, provides for the transfer of such bridge or any other county bridge of similar status, to the Commonwealth".

For the above reasons defendants pray that the complaint be dismissed and judgment entered in their favor.[4]

### Discussion

The sole issue raised by the preliminary objections is whether, under the facts as pleaded in plaintiff's complaint and hereinbefore summarized, the South Plymouth Bridge was, on January 25, 1944, a county highway within the purview and meaning of the Act of 1943, supra. The answer to this question is one of statutory construction.

Section 101 of the Statutory Construction Act of May 28, 1937, P. L. 1019, 46 PS §601, contains the following definitions:

"(19) 'Bridge,' includes the actual bridge and the approaches thereto, and the sub-structures and superstructures of both." and

"(52) 'Highway', a way or place of whatever nature open to the use of the public as a matter of right for purposes of vehicular traffic."

Manifestly, the statutory definition of a highway is

---

[4] Defendants' eighth preliminary objection avers that the bridge in question was closed to the traveling public and hence was not a highway. However, this objection is a speaking demurrer, since the complaint nowhere pleads that the bridge was thus closed prior to the passage of the resolution by the county commissioners on January 25, 1944.

comprehensive enough to include a bridge and our Supreme Court has so held in a number of cases.

The South Plymouth Bridge is a vital link in the State highway system in that, together with a short section of a borough street on the west end thereof and a somewhat longer section of a township road on the east end thereof, it connects two State highway routes. It was for this reason and to avoid the inconvenience and delay necessarily incident to first litigating the question of responsibility for the bridge as between Luzerne County and the Commonwealth of Pennsylvania before it was again made available for public travel that the contract pleaded in plaintiff's complaint was executed on October 30, 1944, whereunder the county forthwith repaired the bridge and in so doing expended upward of $700,000.

Had there been a county highway, irrespective of the length thereof, on both ends of the South Plymouth Bridge then this bridge would clearly have been part of such county highway within the provisions of the Act of 1943, supra, under the well settled principle as stated in 8 Am. Jur. 912, §4, and 11 C. J. S. 985, §3, followed and approved by our Supreme Court and here relied upon by plaintiff, that a public bridge constitutes a part of the highway with which it connects or which passes over it, except where the language of some particular statute is such as to show plainly that the term "highway" is not intended to include bridges.

Thus, in Westfield Borough v. Tioga Co., 150 Pa. 152, the Supreme Court, in a per curiam opinion, approved the language of the lower court wherein it said, p. 153:

"A public bridge is a structure which affords a safe, convenient and complete passage-way over some obstacle that, without it, would prevent, hinder or delay the free transit of those who desire to pass along a public highway. See 2 A. & E. Ency. L., 540, et seq.;

and Law Dictionary, title, 'Bridge.' At common law such a structure is part of the public highway which it thus serves to mend and make more convenient and serviceable to the public: Rex v. Sainthill, 2 Ld. Raym. 1174. And such is the law in this state and generally in this country: (citing authorities)."

Again, in Schlosser v. Manor Township, 293 Pa. 315, the Supreme Court, quoting with approval from the Westfield Borough case, supra, also said, p. 318:

". . . The common law principle that a bridge is necessarily an integral portion of the highway or road crossing it, was early adopted and since, invariably followed in this Commonwealth, . . ."

To the same effect see also Rapho and West Hempfield Townships v. Moore, 68 Pa. 404; Penn Township v. Perry County, 78 Pa. 457; County of Erie v. Commonwealth, 127 Pa. 197; Eichenhofer v. Philadelphia, 248 Pa. 365.

Defendants take no issue with the principle established by the cases above cited. However, they contend that the rule of these cases is not here controlling; that there is no county highway of which the South Plymouth Bridge is a part; that a county bridge in and of itself, unconnected with a county highway, is neither a county highway nor part of a county highway; that the legislature has been most careful to distinguish between the responsibility for the construction and maintenance of highways and the construction and maintenance of bridges; that whenever the Department of Highways has been made responsible for bridges the pertinent statute always made particular provision for such obligation; and that, for these reasons, the Act of 1943, supra, since it relates solely to county highways, is not broad enough to include a county bridge such as the one here in question.

In support of this position defendants rely on a number of acts of assembly, beginning with the Sproul Act

of May 31, 1911, P. L. 468, under which the State highway system was first established. However, section 34 of the Sproul Act defined the word "highway" used therein as follows:

"Section 34. The word 'highway,' as used in this act, shall be construed to include any existing causeway or bridge, or any new causeway or bridge, or any drain or watercourse, which may form part of a road, and which has been or might properly be built, according to any existing laws, by the townships of the Commonwealth. A 'State-aid highway,' as the term is used in this act, shall be construed to mean only such highway as is improved with the aid and co-operation of the State with county and township, or with county or township, borough or incorporated town, either or severally, as the case may be, according to the terms and provisions hereof; but shall not include any causeway or bridge which should properly be built by the county or by the State, under existing laws."

Under the aforesaid definition county bridges were specifically excluded from the provisions of the Sproul Act and only township roads and bridges which formed a part of such roads and had been built by a township were taken over by the State.

That this is the construction placed upon the Sproul Act clearly appears from the case of Schlosser v. Manor Township, supra, wherein the Supreme Court stated, p. 321:

". . . We said in Com. v. Bird, 253 Pa. 364, 372; 'The Commonwealth could, if it had seen fit, have included in its appropriation of roads, under the Sproul Bill, the county bridges located upon the said highways, so taken over, but, for reasons satisfactory to the legislature, this was not done. The excluding of the county bridges thereon, and leaving them for the counties to maintain was not an accident, nor an oversight by the

legislature; as the Acts of 1903, 1905 and 1911, contained similar provisions, thereby showing conclusively, the intention of the legislature to relieve the townships of the Commonwealth from the burden of maintaining the roads so taken, and not to relieve the counties from the responsibility of taking care of county bridges upon the same.' See also Com. ex rel. v. Lehigh C. & N. Co., 285 Pa. 551, 556."

It thus appears that neither the Bird case nor the Manor Township case is authority for the proposition that a county bridge is not a county highway where an act of assembly does not specifically distinguish between them.

All the other acts of assembly cited by defendants dealing with highways and/or bridges also set forth in the body of the act the highways or bridges which are specifically included or excluded from the provisions thereof.[5]

Defendants contend that a review of these acts discloses a studied attempt on the part of the legislature to refrain from placing the responsibility on the Department of Highways for bridges except in a limited manner commensurate with the growth of the State highway system and the larger amounts of revenue available in the motor license fund.

In our opinion, however, it can just as consistently be found that the legislature in the Sproul Act and in the other highway and bridge acts cited by defendants

---

[5] The acts thus cited by defendants are:

Act of May 1, 1929, P. L. 1054, no. 408; Act of May 7, 1929, P. L. 1566; Act of June 22, 1931, P. L. 594; Act of June 22, 1931, P. L. 720; Act of June 1, 1933, P. L. 1172; Act of July 15, 1935, P. L. 1035; Act of July 12, 1935, P. L. 946; Act of May 7, 1937, P. L. 589; Act of May 23, 1945, P. L. 867.

The act last referred to is an independent act. The Sproul Act, as well as the other acts cited in this note, are now included in the State Highway Law of June 1, 1945, P. L. 1242.

recognized the fact that a bridge in and of itself is a highway, or part of a highway, and that, for this reason, it carefully and meticulously enumerated the types of highways, bridges, or other structures which fell within the provisions of a particular act relating to highways and those which were expressly excluded from the provisions thereof.

In fact the legislature, by the Act of June 1, 1945, P. L. 1376, 36 PS §2, effective immediately, amended the Act of 1943, supra, to provide "That the Commonwealth shall not become responsible under the terms of this act for any bridge, viaduct or other structure, except drainage structures, having a total spanned length of ten feet or less, measured along the center line of the highway".

The Act of 1943, supra, as thus amended, was repealed by section 1101 of the State Highway Law of June 1, 1945, P. L. 1242, 36 PS §670-1101, effective September 1, 1945. It is true that the State Highway Law of 1945 was a codification of prior State Highway Acts and that in section 771 thereof (36 PS §670-771) it specifically defined a county bridge when providing for the rebuilding thereof. It is also true that numerous acts were passed prior to 1943 which distinguished between county highways and county bridges. However, we think that these acts are not here controlling for the reason that the legislature did not, in the Act of 1943, supra, make any such distinction.

This conclusion is, further, supported by a line of cases dealing with highways which hold that, when an act of assembly does not distinguish between a public highway and a public bridge, a bridge in and of itself is a public highway.

Thus, in In re Towanda Bridge Co., 91 Pa. 216, there was a proceeding brought by Bradford County to condemn and take over a toll bridge under the Act of May 8, 1876, P. L. 131, as amended by the Act of May 3,

1878, P. L. 41. This toll bridge crossed the Susquehanna River between the Borough of Towanda and the Township of Wysox. On the borough end it connected with a borough street and on the township end it connected with a township road. The toll bridge company, in resisting the condemnation, contended, inter alia, "that the bridge and its approaches are not situated where a public highway is crossed by a river or other stream". This contention was rejected by the Court of Quarter Sessions of Bradford County. In so doing the lower court, affirmed in a per curiam opinion by the Supreme Court, said, p. 220:

". . . The bridge itself is a highway, and forms the connecting lines between the highways on opposite sides of the river. . . ."

Again, in Pittsburgh & West End Passenger Ry. Co. v. Point Bridge Co., 165 Pa. 37, a bridge was held to be a public highway within the meaning of the Act of May 14, 1889, P. L. 211, 67 PS §1111 et seq., authorizing the formation of companies for the purpose of constructing, maintaining and operating street railways upon any street or highway, and this, even though the Act of 1889, supra, nowhere mentioned or referred to bridges. In so holding the Supreme Court said, p. 42:

". . . Aside from the right of the company to demand and receive reasonable tolls from the traveling public for the use of it (the bridge) for the purpose for which it was erected, it does not differ from the ordinary highway constructed and maintained by the inhabitants of a district through which it passes. . . ."

Also, in Point Bridge Company v. Pittsburgh Railways Company, 240 Pa. 105, where, after the case last cited, the City of Pittsburgh in 1896 acquired all of the capital stock of the toll bridge company operating the Point Bridge over the Monongahela River and thereupon made it a free bridge, the Supreme Court in determining the then status of this bridge said, p. 109:

"The bridge which is the subject of this controversy is an essential part of a public street or highway in the City of Pittsburgh. It was none the less so before 1896 when it was the property of a private corporation. 'A bridge erected for public travel and accommodation is a public highway whether built and maintained by the inhabitants of the district, or by a corporation authorized to demand toll for passage over it': Pitts. & West End Pass Ry. Co. v. Bridge Co., 165 Pa. 37. . . ."

Further, in Berks County v. Reading City Passenger Railway Co. et al., 167 Pa. 102, a county bridge, known as the Harrisburg Bridge, crossing the Schuylkill River, the one end of which connected with a public street in the City of Reading and the other end of which connected with a township road, was again held to be a street or highway within the meaning of the Act of 1889, supra.

The Berks County case was followed and cited with approval in Beaver County v. Central District & Printing Telegraph Company, 219 Pa. 340. In this case a bridge company had given to a telegraph company the right to lay its cables and wires across a toll bridge for an annual rental. Thereafter, the bridge was condemned and taken over by Beaver County which then filed a bill in equity against the telegraph company to compel it to remove its wires and cables from the county bridge in question or pay a rental for the use of such bridge. The bill was dismissed by the trial court which held that the county had an adequate remedy at law. In affirming such action, the Supreme Court said, pp. 343, 344:

"In Pennsylvania, bridges are treated as part of the highway, which is carried and supported by them. The law was pointed out, as well as the proper procedure under similar facts, in Berks County v. Reading City Pass. Ry. Co., 167 Pa. 102. Under such circumstances

it was shown that the county owns the bridge, and maintains it for the comfort and convenience of the traveling public. It is liable for its proper construction and safety as part of the highway. It cannot arbitrarily refuse the use of the bridge for purposes which have been lawfully authorized upon the highways. The county commissioners have, however, the right within reasonable limits to regulate the manner in which the bridge may be used, and may provide for its repair, and require a proper compensation by way of rental."

It thus appears that a bridge, even a county bridge in and of itself, is a highway under the provisions of an act of assembly which merely relates to highways and does not specifically exclude toll bridges or county bridges.

The Act of May 28, 1943, P. L. 796, in the title and body thereof refers solely to county highways. It does not specifically exclude the county bridge here in question. Therefore, upon application of the principles of the cases hereinbefore cited to the facts as pleaded in plaintiff's complaint, and since the legislature, although it knew how to distinguish between a bridge and a highway, did not choose so to do in the act in question, we find that the South Plymouth Bridge in and of itself is a county highway, even though said bridge does not connect directly with a county highway at either end thereof. Accordingly, for the reasons above stated, the preliminary objections of defendants to plaintiff's complaint in mandamus are overruled.

### Order

And now, November 27, 1950, the preliminary objections filed by defendants to plaintiff's complaint in mandamus are hereby overruled and defendants are given 20 days within which to file an answer thereto.