## Commonwealth ex rel. v. Hibbs et al.

*Mandamus — Townships — County bridges — Existing laws — Acts of March 15, 1911, and May 31, 1911.*

The words "existing laws" in section 34 of the Act of May 31, 1911, P. L. 468, known as the Sproul Act, which provides that the word "highway" "shall be construed to include any existing causeway or bridge or any new causeway or bridge, any drain or watercourse which may form part of a road, and which has been or may properly be built according to any existing laws by the townships of the Commonwealth," refer to laws existing at the date of the approval of the act, and this provision does not apply to township bridges built under an act which had been repealed before May 31, 1911; hence, the burden of maintaining such a bridge is on the county commissioners and not on the Commonwealth.

Petition for mandamus. C. P. Westmoreland Co., Aug. T., 1925, No. 384.

Before Whitten and Dom, JJ.

*James O. Campbell,* 1st Deputy Attorney-General, and *John E. Kunkle,* for plaintiff.

*Marker & Rial* and *Philip K. Shaner,* for defendant.

PER CURIAM, Aug. 10, 1925.—The Beaver Run bridge was built in 1897 by the Supervisors of Salem Township, Westmoreland County, Pennsylvania. Said bridge was and is a portion of a turnpike or toll-road which was abandoned by the owner thereof on or before 1895. The said turnpike road, by virtue of the Act of May 31, 1911, P. L. 468, known as the Sproul Act, became a state highway, known as the William Penn Highway, being Route No. 187. Said turnpike was actually taken over by the State Highway Department June 1, 1912.

Commonwealth ex rel. v. Hibbs et al.

It is conceded that said Beaver Run bridge is inadequate to accommodate public travel thereon, is out of repair, and, by reason thereof, is a menace to the safety of the public who travel said highway. It is also conceded that the County Commissioners of Westmoreland County were notified by the State Highway Commissioner to maintain and repair the said bridge, and that the said county commissioners have refused so to do.

The Commonwealth of Pennsylvania, at the instance of the Attorney-General, now asks the court to award a writ of mandamus, commanding said county commissioners to maintain and repair the said Beaver Run bridge.

The Commissioners of Westmoreland County answer that the burden of reconstructing and maintaining said bridge rests upon the Commonwealth of Pennsylvania, and not upon the County of Westmoreland.

In 1897, when said Beaver Run bridge was built by Salem Township, the duty of building and maintaining the same rested upon the said township. The Act of April 25, 1907, P. L. 104, shifted this burden to Westmoreland County. The Act of May 10, 1909, P. L. 499, returned the burden to Salem Township; and the Act of March 15, 1911, P. L. 21 (approved March 15, 1911), reimposed this burden upon Westmoreland County.

Section 6 of said Sproul Act provides:

"From and after the adoption of this act, all those certain existing public roads, highways, turnpikes and toll-roads, or any parts or portions thereof, subject to the provisions hereinafter made in the case of turnpikes and toll-roads . . . shall be known, marked, built, rebuilt, constructed, repaired and maintained by and at the expense of the Commonwealth, . . . the same being more particularly described and defined as follows: . . .

"Route 187. From Pittsburgh to Indiana—Commencing at a point on the boundary line of the City of Pittsburgh and running by way of Monroeville to a point on the dividing line between Allegheny and Westmoreland Counties, thence by way of Salem to New Alexandria."

Section 11 of said act provides:

"The State Highway Commissioner is directed to construct or improve, and thereafter to maintain and repair, at the cost and expense of the Commonwealth, the highways forming the plan or system of state highways, in the several counties and townships hereinbefore mentioned," etc.

Section 34 of said Sproul Act provides:

"The word 'highway' as used in this act shall be construed to include any existing causeway or bridge, or any new causeway or bridge, or any drain or watercourse, which may form part of a road, and which has been or might properly be built, according to any existing laws, by the townships of the Commonwealth."

Section 6 of said Sproul Act imposed the burden of constructing and maintaining all state highways therein designated (including Route No. 187) upon the Commonwealth of Pennsylvania.

However, the learned counsel representing the Commonwealth contend that section 34 of said Sproul Act limits the burden of the Commonwealth—as to the construction and maintenance of causeways or bridges and drains and watercourses—to causeways and bridges which form part of a road, and which, at the date of the approval of the Sproul Act, the township was liable to construct and maintain.

In other words, the Commonwealth contends that the test is, whether, on May 31, 1911 (the date of the enactment of the Sproul Act), the Township of Salem or the County of Westmoreland was chargeable with the construction and maintenance of Beaver Run bridge.

Commonwealth ex rel. *v.* Hibbs et al.

Commonwealth's counsel contend that immediately before May 31, 1911, the burden reconstructing and maintaining Beaver Run bridge rested upon Westmoreland County; and that the Sproul Act did not shift such burden to the Township of Salem or to the Commonwealth of Pennsylvania.

The learned counsel representing the County of Westmoreland contend that, because the Township of Salem, in 1897, constructed Beaver Run bridge, and because, under the laws existing in 1897, said township was obligated to build and maintain said bridge—the Commonwealth of Pennsylvania, under the provisions of the Sproul Act, assumed the burden of reconstructing and maintaing this bridge when it took over Route No. 187, of which the said Beaver Run bridge forms a part.

The counsel on both sides agree that the decision of the court in the instant case depends upon the proper construction of section 34 of the Sproul Act.

It is conceded that Beaver Run bridge forms a part of Route No. 187.

The disputed question is, whether said bridge "has been or might properly be built, according to any existing laws," by the Township of Salem. In 1897 Beaver Run bridge was built by the Township of Salem in accordance with laws then existing. This is not disputed.

However, after March 15, 1911, and prior to May 31, 1911 (when the Sproul Act was enacted), the burden of reconstructing and maintaining this bridge rested on the County of Westmoreland.

After March 15, 1911, and before the enactment of the Sproul Act (May 31, 1911), Beaver Run bridge could not properly have been built by Salem Township in accordance with the laws then existing.

In Com. ex rel. *v.* Bird, 253 Pa. 364, the bridge in question formed part of Route No. 17, and was a wooden structure 100 feet long, which had been constructed pursuant to a proceeding under the 35th section of the Act of June 13, 1836, P. L. 551, by the County of Bradford, as a county bridge; which proceedings were entered of record; and thereafter said bridge had been maintained and repaired by the said county: Held, that the burden of reconstructing and maintaining said bridge rested upon the County of Bradford.

In Manchester Township *v.* Wayne County Commissioners, 257 Pa. 442, the County of Wayne in 1898, by proceedings under the Act of June 2, 1887, P. L. 306, had appropriated a turnpike road situate in Manchester Township. After such appropriation the said road had been maintained by said township until 1916, when the supervisors of the township applied to the Court of Common Pleas for a writ of mandamus, requiring the County Commissioners of Wayne County to maintain and repair said appropriated road. The court below awarded the writ and the Supreme Court, on appeal, affirmed the judgment. The appropriated turnpike was not a state highway under the Act of May 31, 1911, P. L. 468. This case did not involve the construction of a bridge.

In Com. ex rel. *v.* Grove, 261 Pa. 504, a writ of mandamus was awarded requiring the County Commissioners of Centre County to maintain and repair' two bridges along Route No. 56. Route No. 56 had been a turnpike road, which, on Jan. 27, 1908, was appropriated and paid for by Centre County. The petition for mandamus was filed in 1916.

In that case, the bridge had not been built by College Township; and said township was not required by any law existing either in 1908 or on May 31, 1911, to build said bridges.

In other words, in 1908, when the turnpike was condemned by Centre County, the duty of maintaining these bridges rested on that county; and after the

passage of the Act of March 15, 1911, P. L. 21 (March 15, 1911), the duty of maintaining said bridges rested upon Centre County. It was held that the Act of May 31, 1911, P. L. 468, did not shift this burden from the county to the Commonwealth.

In the above case, the Supreme Court, in affirming the judgment of the court below, said: "By the repealing Act of March 15, 1911, P. L. 21, the duty of maintaining the two bridges involved in this proceeding was reimposed upon the County of Centre, and that duty continues to rest upon it under section 34 of the Act of May 31, 1911, P. L. 468: Com. ex rel. *v.* Bird, 253 Pa. 364."

We are of opinion that the instant case cannot be distinguished in principle from Com. *v.* Grove, 261 Pa. 504.

The legislature has the power to classify the highways of the Commonwealth, and to impose the burden of the construction or maintenance of each class either upon the Commonwealth or upon a particular municipal division in which such highway is located.

The cost of the construction of a bridge may be imposed on a county, while the maintenance of said bridge may be imposed upon a township or other municipality through which it passes; for the construction and maintenance of highways is delegated to the legislature.

Speaking of this subject, the Superior Court in Com. *v.* Bowman, 35 Pa. Superior Ct. 410, 414, says: "There is no constitutional obligation on any municipal district to maintain public highways. The duty is imposed by statute, and it is a matter of legislative discretion whether a highway shall be maintained by the county or by a local municipal district. . . . A county bridge and the approaches thereto are a part of the public highway, often wholly in one township, and are erected and maintained at the charge of the county, but no one contends that the township may not be relieved from the cost of such part of a public highway by proper proceedings in the Court of Quarter Sessions. In such a case, all of the taxpayers of the county are required to contribute to the erection and maintenance of the bridge, which, before it was made a county charge, was a burden upon the local district. Highways are for the use of the public generally, and if, by reason of difficulty of construction or cost of maintenance, it is deemed advisable that one of them be constructed or maintained out of the county fund, taxpayers of another township or borough have no standing to object on the ground of inequality of taxation."

We are constrained to hold that the phrase "any existing laws," as used in section 34 of the Sproul Act of 1911, relates to the time of the enactment of said Sproul Act.

In Jonesboro *v.* Cairo & St. Louis R. R. Co., 110 U. S. 192, the facts were as follows: The citizens of the City of Jonesboro, in 1868, voted to subscribe $50,000 to the capital stock of the Cario & St. Louis Railroad Company. When the vote was taken the city was not authorized by the laws of Illinois to make such subscription. However, in 1869, an act was passed by the Legislature of Illinois ratifying such subscriptions as had previously been voted by the electors of any city. In 1870 the State of Illinois adopted a new constitution, which contained the following proviso: "No . . . city . . . or other municipality shall ever become subscribers to the capital stock of any railroad or private corporation.. . . . Provided, however, that the adoption of this article shall not be construed as affecting the right of such municipality to make such subscriptions where the same have been authorized, under the existing laws, by a vote of the people of such municipalities prior to such adoption."

Commonwealth ex rel. *v.* Hibbs et al.

Refering to the above proviso of the Constitution of Illinois, the United States Supreme Court, in the case above cited, says: "We are of opinion that the right of the city to make the subscription in question and to issue bonds in payment thereof was saved by the above proviso. . . . The phrase 'under existing laws' in the section of the Constitution referred to relates, we think, to the time of the adoption of the Constitution, rather than to the time when the vote of the people was in fact taken."

In the instant case, we are constrained to hold that the phrase, "any existing laws," in section 34 of the Sproul Act, refers to laws existing at the time of the adoption of said Sproul Act; and does not refer to laws which were in existence in 1897, when Beaver Run bridge was built.

In other words, the expression, "any existing bridge, or any new bridge, which has been or might properly be built according to any existing laws, by the townships," comprehends only bridges that had been built by townships under laws which were still in existence when the Sproul Act was enacted; and also new bridges, which might properly be built by townships under laws existing, or in force, when the Sproul Act was enacted.

At the time when the Sproul Act was enacted, the law under which Salem Township had built Beaver Run bridge was not in existence—it having been repealed March 15, 1911, by the Act of March 15, 1911, P. L. 21—six weeks before the passage of the Sproul Act.

Here there was proof that in recent years an employee of the State Highway Department made slight repairs upon the Beaver Run bridge, but no special authority so to do was shown. We are of the opinion that the duty of constructing and maintaining this bridge was not thereby transferred from the County of Westmoreland to the Commonwealth of Pennsylvania: East White Land Township *v.* Chester Co., 235 Pa. 579; Winters *v.* Koontz, 60 Pa. Superior Ct. 134.

The learned counsel for the respondents earnestly contend that, inasmuch as the duty of constructing and maintaining this highway (Sproul Route No. 187) is imposed upon the State, the duty of constructing and maintaining bridges thereon should be imposed upon the State—thus giving the State undivided jurisdiction and exclusive control over such highway.

We agree that the jurisdiction and control of the Commonwealth over state highways should include all bridges forming parts of such highways. However, the legislature has decreed otherwise. If a change in the law is desired, the appeal therefor must be made to the legislature—not to the courts.

## Decree.

And now, Aug. 10, 1925, this case came on for hearing upon petition, answer and proofs, and was argued by counsel, and, after due consideration, it is ordered, adjudged and decreed that a writ of peremptory mandamus issue, commanding and directing Elliott L. Hibbs, James F. Torrance and John P. Kilgore, County Commissioners of Westmoreland County, forthwith to maintain and repair the said bridge described in the said petition, and place the same in good, proper and safe condition, suitable and sufficient to accommodate public travel, at the proper expense of the County of Westmoreland; and commanding and directing the said Weber A. Arter, controller of said county, to advertise for bids for the performance of the work and the purchase of the materials necessary in the maintenance and repair of the said bridge, and otherwise to perform the duties required by him to be done under the acts of assembly in such cases made and provided; and that the costs of this proceeding be paid by the County of Westmoreland.