# Eichenhofer v. Philadelphia, Appellant.

*Negligence—Municipalities—Bridges—Child playing on bridge —Death—Improper design—Non-expert witnesses as to design— Harmless error—Evidence—Postal cards — Admissibility — Case for jury.*

1. A bridge is a part of a highway and as such the duty of keeping it in reasonably safe condition for travel is as imperative as the duties connected with other parts of the highway, and the question whether, under the circumstances of a particular case, a distinct part of the highway is properly constructed and guarded is generally for the jury.

2. The rule that where the proper authorities of a municipality, in the exercise of their discretion, have adopted a specially designed structure as being suitable for a designated location, a jury cannot be permitted to say that their discretion was improperly exercised, is subject to the exception that, if the facts of the case justify it, a jury may decide whether or not the plan on which the structure was built was so defective as to make its adoption an act of negligence.

3. The tendency of children in playing to dart suddenly from one side of the street to the other is so natural and well known that a municipality in maintaining a bridge much used by chil-

dren is bound to anticipate and guard against a probable misstep or stumble by a child and provide such safe guard as would reasonably prevent a fall from the bridge.

4. In an action to recover damages for the death of plaintiff's 9 year old son, caused by his fall, while at play on a bridge, through a twenty-two inch opening between the lower guard rail thereof, and the cap log which extended along the outer edge of the planking of the roadway, the case was properly submitted to the jury where it appeared that the bridge was part of a highway maintained by defendant municipality, that it was used daily by more than two thousand persons, many of whom were children, and that it was the only bridge in the locality not guarded in such a manner that an accident similar to the one complained of could not have happened.

5. In such case where there is testimony to the effect that the bridge was obsolete in design, and that there was another safer way to build such bridge, the jury should have the right to pass upon such evidence, and it is immaterial that the evidence of witnesses other than experts on this subject is admitted.

6. Where in such case the trial judge told the jury that the city would be negligent if it built a bridge with an open space "which would possibly allow people that were properly using the bridge to fall into that space," but where the word "possibly," when taken in connection with the other instructions, was apparently used in the sense of "perhaps," the jury could not have misunderstood the directions, and the improper use of the word "possibly" was not reversible error.

7. In such case the contention that a postal card, which a witness testified came in reply to a written complaint relating to the accumulation of earth on the bridge, was inadmissible because not shown to have been sent by defendant's agents, was without merit, where the subject matter was sufficiently identified by the witness, and by the card, to raise the inference that the card was sent by the agents of defendant.

Argued Jan. 7, 1915. Appeal, No. 182, Jan. T., 1914, by defendant, from judgment of C. P. No. 4, Philadelphia Co., Sept. T., 1912, No. 1207, on verdict for plaintiff, in case of Frederick Eichenhofer and Mary Eichenhofer, his wife, *v*. City of Philadelphia. Before BROWN, C. J., POTTER, ELKIN, STEWART, MOSCHZISKER and FRAZER, JJ. Affirmed.

Trespass to recover damages for personal injuries. Before WILLSON, P. J.

The opinion of the Supreme Court states the facts.

Verdict for plaintiffs for $1,600 and judgment thereon. Defendant appealed.

*Errors assigned* were rulings on evidence, instructions to the jury, the refusal of the court to direct a verdict for defendant and to enter judgment for defendant n. o. v.

*Paul Reilly,* Assistant City Solicitor, with him *Thomas Boylan,* Assistant City Solicitor, and *Michael J. Ryan,* City Solicitor, for appellant.

*W. W. Porter,* of *Porter, Foulkrod & McCullagh,* for appellees.

OPINION BY MR. JUSTICE FRAZER, March 8, 1915:

In this action plaintiffs claimed to recover from the City of Philadelphia damages for the death of their nine year old son, caused by his falling from a bridge erected over the Schuylkill Canal by defendant city. The bridge was erected in 1885, and is an iron truss structure with overhead chords on each side, and on the outside of the planked roadway and about level with the floor, are two series of parallel iron bars or chords fourteen inches apart, extending horizontally from one main upright iron rod or post to another. The inner chords touch the ends of the floor planks of the bridge, and the fourteen inch space between the two parallel chords is unprotected. Inside of the inner chords and extending along the outer edge of the planks of the bridge is a cap log of timber six inches square. This marks the edge of the roadway, and is designed to keep wagon wheels a sufficient distance from the sides of the bridge to prevent the hubs from coming into contact with the iron work. The sides of the bridge are further protected by three

iron pipe railings running from the center of the upright posts and braces from six to seven inches outside of the exterior line of the cap log; the lower railing being twenty-five and one-half inches above the parallel chords and twenty-two inches diagonally from the outer edge of the cap log. These railings are carried by small posts or uprights six and one-half feet apart. The bridge is used to a limited extent by vehicles, and has no sidewalks or foot-paths connected with it. It is principally used by pedestrians going to and coming from the numerous factories and mills located along the canal, together with a large number of children who carry dinner to their parents employed in the mills. On the afternoon of July 26, 1912, plaintiffs' son in company with other children, was crossing the bridge returning to their homes. One of the boys had in his possession an air-rifle, which he pointed at plaintiffs' son, who to avoid the gun walked backwards, and in doing so tripped over the cap log and fell through the twenty-two inch opening between the lower guard rail and the cap log into the canal below and was drowned. At the end of the bridge where the accident happened considerable gravel and earth had accumulated; there was, however, no evidence that the presence of this debris contributed to the accident, neither was there any evidence that the bridge was out of repair, nor that the unfortunate occurrence was the result of defect in its condition. The negligence charged was the improper design of the bridge, which left between the guard rail such space as to make possible an accident such as happened in this case. At the trial in the court below a verdict was rendered in favor of plaintiff, and this appeal followed a refusal of the court to enter judgment in favor of defendant non obstante veredicto.

A bridge is a part of a highway on which it is found, and as such, the duty of keeping it in reasonably safe condition for travel is as imperative as the duty connected with other parts of the highway, Beaver County

v. Central District & Printing Telegraph Company, 219
Pa. 340; and the question whether under the circum-
stances of the particular case a distinct part of the high-
way is properly constructed and guarded, is generally
for the jury. Appellant contends, however, that the pres-
ent case is controlled by the line of cases which hold that
a municipality is not bound to adopt the best known plan
of bridge building, nor is it an insurer against accidents;
but that its duty is fully met when it keeps a bridge in
proper repair and condition in accordance with its origi-
nal design; and where the proper authorities in the
exercise of their discretion, have adopted a special de-
sign of structure as being suitable for the purpose of a
designated location, a jury cannot be permitted to say
that their discretion was improperly exercised; citing
Oil City & Petroleum Bridge Company v. Jackson, 114
Pa. 321; Lehigh County v. Hoffort, 116 Pa. 119; Childs
v. Crawford County, 176 Pa. 139; Horner v. Philadel-
phia, 194 Pa. 542, and McIntyre v. Pittsburgh, 238 Pa.
524. This rule enunciated in numerous cases is subject
to the exception, that if the facts of the case justify, a
jury may decide whether or not "the plan on which the
bridge was built was so defective as to make its adoption
an act of negligence"; Childs v. Crawford County, 176
Pa. 139. The cases cited above by appellant are dis-
tinguishable from the case at bar. In Oil City & Petro-
leum Bridge Company v. Jackson, the action was by the
father to recover damages for the death of his seven year
old son, who by recklessly venturing to walk outside of
the way provided for vehicles and pedestrians, fell into
the river and was drowned. Under such circumstances
it was held, the bridge company was not liable. In Le-
high County v. Hoffort, the negligence alleged was the
failure to place on a county bridge a guard-rail between
a foot-path and driveway, which made it possible for the
plaintiff to be struck by a runaway horse. There it was
held that the absence of the guardrail was not evidence
of negligence, the court saying it might as well be argued

that a guard rail for the same purpose should be placed along city streets. In Horner v. Philadelphia, plaintiff was injured by stumbling over a fire plug located on the sidewalk about four inches from the curb. This court while holding that the municipality had the sole authority to determine the location of the fire-plug, and that "their discretion is not to be subject to the verdict of juries" said: "There was no evidence showing that the fire-plug was placed in an unusual position or was of defective structure such as to induce the accident for which the action was brought." In McIntyre v. Pittsburgh, the claim was based upon the improper construction of steps erected by the city for public use, there the width of the tread was important and plaintiffs' witnesses "guessed" at their width, while defendant's witnesses testified to actual measurements. In denying plaintiff's right to recover it was said, "she brought nothing more than conjecture upon the part of her witnesses to sustain the point and as against actual measurements these guesses did not amount to a scintilla of evidence." The difference between these cases and the one at bar is apparent. In McCormick v. Washington Township, 112 Pa. 185, Mr. Chief Justice MERCUR, in speaking of the liability of a township, says, "Its liability stops with constructing and maintaining its bridges so as to protect against injury by a reasonable, proper and probable use thereof in view of the surrounding circumstances, such as the extent, kind and nature of the travel, and business on the road of which it forms part." Counsel for appellant admit there must necessarily be a limit to the latitude allowed public officials in determining the suitability of a particular construction, and frankly concede that if there was testimony to the effect that the bridge was obsolete in design and that there was another safer way to build such bridges, the jury should have the right to pass upon such evidence. It is contended, however, that before a case can be submitted to a jury there must be testimony of experts in bridge building to the

effect that the particular bridge as constructed was not a proper or usual type for the purpose required, granting that such testimony would be helpful to the court and jury; it does not follow that it is the only evidence which may be considered. If no side protection had been used on the bridge in question, certainly evidence of that fact together with proof of the nature of the surroundings and the extent of the use made of the bridge by the public generally, would be sufficient to take the case to the jury, notwithstanding absence of expert evidence as to whether the bridge was of a usual type, and it might be sufficient for that purpose if there were expert testimony on behalf of defendant that the bridge was of the usual type. There was evidence that two or three thousand persons passed over the structure daily, many of them children carrying dinner to their parents, who worked in nearby mills and factories. George W. Rummey, a former highway inspector of defendant city for seven or eight years, testified that he was more or less familiar with other bridges in the city, and that this was the only structure of the kind in or near this locality that was not guarded in such manner that an accident similar to this could not happen. This witness was not an expert bridge builder and was not offered as such. The main objection to his testimony is that he was not sufficiently familiar with other bridges in the city to afford a proper standard of comparison. The question is not one merely of comparison, but of condition of the bridge in question. If all other bridges in the neighborhood were of similar construction to this one, that fact would not necessarily be conclusive that the city was not negligent in maintaining them. Repeated acts of negligence do not justify a continuance of such acts. Although the knowledge of Mr. Rummey concerning other bridges was neither clear nor extensive since he was not offered as an expert, this affected only his credibility and not his competency. Furthermore, as stated above, a comparison with other bridges was not a necessary part of plaintiffs' case. It

is true the opening here was not in the main traveled part of the highway. If such were the case defendant's negligence would be clear, and could have been so pronounced by the court. The opening, however, was immediately adjacent to the roadway, and so situated that a child leaning upon the railing would be in imminent danger of falling through, and a person walking in the dark and guided by the railing might miss the cap log and step into the opening. An extension of six inches in the flooring boards would have obviated all danger.

In the sixth assignment the charge is criticised by the city solicitor as requiring the municipality to anticipate possibilities. While the words "possible" and "possibility" are used they are always coupled with and modified by the words "reasonable" and "natural, probably or likely," and the jury was instructed that they could find for the plaintiff if "what happened was only the natural result from what existed on the bridge," this instruction can hardly be said to have prejudiced defendant.

The portion of the charge embraced within the fifth assignment of error is more open to criticism. The trial judge there said in effect that the city would be negligent if it built a bridge with an open space; "which would possibly allow people that were properly using the bridge to fall into that space." "Possibly" is defined in the Standard Dictionary as, "(1) by any power mental or physical, that is possible, (2) by extreme or improbable chance; perhaps." If this statement stood alone it might constitute reversible error. Taken in connection with the other instructions contained in the charge it is apparent that "possibly" here was used in the sense of "perhaps," and the proper limitations were frequently repeated in subsequent portions of the charge. In our opinion the jury could not misunderstand the direction on this point when the charge is considered as a whole. On the question of proximate cause it appears the bridge was used extensively by children of the neighborhood of which defendant presumably had notice.

Tendency of children to run and play and dart suddenly from one side of the street to the other is such a natural one, and so well known, that defendant was bound to anticipate and guard against a probable misstep or stumble, and provide such safe guard as would reasonably prevent a fall from the bridge into the canal. If the failure to guard the opening was negligence then this negligence was the proximate cause of the accident.

The first assignment of error complains of the admitting in evidence of a postal card which the witness testified came in reply to a written complaint relating to the accumulation of earth, etc., on the bridge near where the accident happened. We see no error in this ruling. The subject matter was sufficiently identified by the witness, and by the card itself to render it admissible; Roe v. Dwelling House Insurance Company, 149 Pa. 96.

The general instruction on the measure of damages were full and correct, and the size of the verdict does not indicate that the jury went beyond the guide laid down by the court. While part of the charge dealing with the damages may be open to the criticism of inadequacy because it failed to specifically instruct on the present worth rule, yet, since counsel failed to submit a request on the point in question or to call the attention of the court to the alleged inadequacy, under the circumstances at bar, we are not convinced of reversible error. Mastel v. Walker, 246 Pa. 65; Fedorawicz v. Citizens' Electric Illuminating Co., 246 Pa. 141.

On the whole the evidence was ample to take this case to the jury, and as we find no reversible error in either the court's rulings or instructions to the jury, the assignments of error are overruled and the judgment affirmed.