## Commonwealth of Pennsylvania, ex rel., v. Bird, Appellant.

*Bridges—State highway—Duty of county to maintain bridge— Act of May 31, 1911, P. L. 468—County commissioners—Mandamus.*

The duty to maintain a bridge forming part of a State highway built under the Act of May 31, 1911, P. L. 468, rests upon the county and not the Commonwealth where the duty to maintain it rested upon the county at the time of the passage of the act and mandamus will properly issue against the county commissioners to compel them to construct and maintain a suitable bridge after a finding by the grand jury that the existing bridge is in dangerous condition and that a bridge at the point in question is necessary.

Argued March 15, 1916.   Appeal, No. 437, Jan. T., 1915, by defendants, from order of C. P. Bradford Co.,

Sept. T., 1915, No. 337, awarding mandamus to construct and maintain a bridge in case of Commonwealth of Pennsylvania, ex relatione Charles M. Culver, District Attorney, v. George N. Bird, Jesse L. Ellsworth, and Miles E. Horton, County Commissioners of Bradford County. Before MESTREZAT, POTTER, STEWART, MOSCHZISKER and FRAZER, JJ. Affirmed.

Petition for writ of peremptory mandamus to compel the county commissioners of Bradford County to construct and maintain a bridge forming part of a State highway.

The facts appear in the following opinion of MAXWELL, P. J.:

The question raised for our determination is, whether or not the law imposes upon the County of Bradford, the duty of maintaining and rebuilding of a certain bridge located upon the main highway leading from Laporte, Sullivan County, Pa., to Towanda, Bradford County, Pa.

The bridge is in an admittedly dangerous condition, and is located upon one of the main principal roads of the county. The condition of this bridge is such that it requires the immediate attention of the proper authorities, to make the same reasonably safe for the accomodation of public travel.

The bridge in question is located upon a "State Highway," adopted by the "Sproul Act" of May 31, 1911, P. L. 468, and designated as Route No. 17 by said act.

The facts appear by the case submitted as follows:

This bridge is located upon the said highway between Monroeton and New Albany, this county, and is one of the public roads or routes, included in the Act of May 31, 1911, P. L. 468, known as the "Sproul Act," and is the bridge over the south branch of Towanda Creek in the Township of Monroe, County of Bradford, and State of Pennsylvania, and is known as "Kelloggs' Bridge." The present bridge is a wooden structure 100 feet in length, and by due and regular proceedings, was entered

of record, and constructed as a county bridge, by the County of Bradford, in the year 1866, and has been kept in repair and maintained as a county bridge, from that date to the present time.

That said bridge is necessary for the safe and convenient travel of the public in, along and over said highway.

That the county commissioners of the said county, after an inspection of said bridge, have condemned the said bridge, as no longer reasonably safe for public travel, and as such have closed the same to the public, and all travelers are prohibited from using the same, save with such notice and at the traveler's risk, and which is a great public inconvenience.

On April 19, 1915, a petition was presented by the said county commissioners, to the Court of Quarter Sessions of Bradford County, setting forth, inter alia, in substance, the foregoing facts, and which proceedings are filed to No. 4 Road Docket 1915.

It was further alleged in said petition, by the said county commissioners "that it was their belief that it was necessary that a new bridge be erected and constructed, with concrete abutments and steel superstructure, concrete floor, etc., in order to be sufficient for the present traffic, and, if the county was still liable to provide this bridge, that it was necessary and their duty to promptly reconstruct the same but alleging that the State highway commissioner had generally and unconditionally taken over the said highway under the said Act of May 31, 1911, known as the "Sproul Bill," which was included in Route 17 from Laporte to Towanda, contending also, that such route comprehended and included the said county bridge, and that the same was no longer for the county to keep, provide, maintain and repair, but that the same has passed to and become a State highway, with all duties incident thereto upon the State Highway Department and the Commonwealth, but submitting an estimate and the facts for the determination of the Court

of Quarter Sessions, and referring the same to the approval of the court and grand jury, as provided by the Act of February 14, 1907, P. L. 3."

Upon presentation of which petition, the court made a conditional order and approval, granting the prayer of the county commissioners, and referring the whole matter to the grand jury for approval. April 20, 1915, the grand jury reported, in substance, that the said bridge was necessary, and by reason of old age, wear, rotten, decayed and unsafe condition for public travel, should be closed to the public for the present, but that there was uncertainty, whether, under the law and the facts, it was the duty of Bradford County to erect and construct the same, or whether it was the duty of such highway department to rebuild and construct the same, and the said grand jury made a conditional report, approving the same, provided it was legally determined that the liability rested upon the county commissioners of Bradford County to rebuild the same, and that if such liability existed, that the said new bridge was necessary and when reconstructed, should be a county bridge and paid for out of the county funds of the County of Bradford, but not otherwise.

It was further alleged in said petition, that since which time, the county commissioners of Bradford County, have not done anything toward the rebuilding of said bridge, although they have been often requested to do so, and they still neglect and refuse, absolutely, to erect and construct a new and sufficient bridge, to take the place of the said old bridge.

It was further alleged in said petition, that the said county commissioners, have given notice to the supervisors of the Township of Monroe, that the County of Bradford will not furnish and provide the said bridge as provided by law, and informing the said supervisors that the duty devolves upon the said Township of Monroe, through its said officers, to furnish a temporary way that

should, be convenient, safe and sufficient for the public, until a permanent bridge shall be erected.

And it was further alleged in said petition, that it was the duty of the county commissioners of the County of Bradford, and the respondents in this case, to rebuild and construct a sufficient county bridge, to take the place of the old one above mentioned, as provided by the Act of February 14, 1907, P. L. 3. That the relator, your petitioner, is without other adequate and specific remedy at law.

Upon presentation of said petition, on August 2, 1915, the court granted a rule upon the respondents, to show cause why an alternative writ of mandamus should not be issued to the county commissioners of Bradford County, as therein prayed for. Returnable the 4th day of August, 1915, at ten o'clock, a. m.

August 2d, respondents through their attorney, signed the following waiver:

"The actual issuing and service of the writ of alternative mandamus in this case is waived and the respondents voluntarily appear in court-to respond to and answer the petition and complaint with the same force and effect as though the writ had regularly been issued, served and the day for appearance and answer had arrived, and voluntarily submit to the jurisdiction of the court."

The parties to the above case, by their respective attorneys, on the 21st of August, 1915, filed of record the following stipulation, to-wit:

"Now, August 21, 1915, to avoid delay and expense of taking evidence or hearing in the above entitled case, it is agreed that the facts contained in the petition and answer in this case shall be considered and treated as proven and established, without further or formal proof.

"It is further agreed if upon the facts, the court shall find that the county and not the State is still continuing, bound and obligated to construct, maintain and keep in repair the bridge that was formerly a county bridge as described in the said proceedings, that then a peremptory

injunction and formal judgment and decree may be entered against the respondents, otherwise that the petition presented in this case shall be dismissed, with right to either party to enter an appeal to an appellate court.

"That the court shall make such order as to costs as shall seem just under the circumstances.

"LILLEY & WILSON,

"Attorneys for the Relator.

"R. A. MERCUR,

"Attorney for the Respondents and County Solicitor."

There are four classes of public roads, exclusive of turnpikes.

(1) Township roads; (2) County roads; (3) State-aid Highways; and (4) State Highways.

Township roads embrace and include the ordinary public roads in townships, which are laid out and maintained under the law, by the township supervisors of the respective townships.

County roads are such as are provided for by the Acts of Assembly of June 26, 1895, P. L. 336; May 11, 1911, P. L. 244, and May 21, 1913, P. L. 287.

State-aid Highways were created under the Act of the 15th of April, 1903, P. L. 188, which provided for the co-operation by the State with the several counties and townships, in the improvement of public highways, and the maintenance of said highways, so improved.

Section 18 of the Act of April 15, 1903, provides as follows:

"The word 'highway' as used in this act, shall be construed to include any existing causeway or bridge or any new causeway or bridge, or any drain or water course which may form a part of a road, and which might properly be built, according to the existing laws, by the township or townships; but shall not include causeways or bridges which should properly be built by a county, or adjoining counties, or by the State."

Section 19 of the Act of May 1, 1905, P. L. 318, is sub-

stantially a re-enactment of Section 18 of the Act of 1903.

The Act of May 31, 1911, P. L. 468, repeals the Acts of 1903 and 1905.

Sections 21 to 33 inclusive, provide for the construction and maintenance of what are known as State-aid highways.

Section 34 of this last act, defines a State-aid highway as follows:

"A 'State-aid Highway,' as the term is used in this act, shall be construed to mean only such highway as is improved, with the aid and cooperation of the State with county and township, or with county or township, borough or incorporated town, either or severally, as the case may be, according to the terms and provisions hereof; but shall not include any causeway or bridge which should properly be built by the county or by the State, under existing laws."

This same section defines a State highway:

"The word 'highway,' as used in this act shall be construed to include any existing causeway or bridge or any new causeway or bridge, or any drain or water-course, which may form part of a road, and which has been or might properly be built according to any existing laws, by the townships of the Commonwealth."

State highways as such, are under the exclusive authority and jurisdiction of the State highway department. They are distinguished however, from State-aid highways, provided for in the same act, and which are improved and maintained at the joint expense of the State, counties and townships, respectively.

Our principal inquiry relates to township roads, as they originally existed prior to the taking over by the State, of the same as a highway.

It has long been the policy of the Commonwealth, under certain circumstances, to impose the building and maintenance of bridges upon the county, for the relief of the township or townships, where such bridge or bridges,

by reason of the expense of the erection and maintenance of the same, are greater than a township should reasonably bear under the Act of June 13, 1836, P. L. 551, Sec. 35.    This act reads as follows:

"When a river, creek or rivulet over which it may be necessary to erect a bridge crosses a public road or highway and the erection of such bridge requires more expense than it is reasonable that one or two adjoining townships should bear, the court having jurisdiction as aforesaid shall, on the representation of the supervisors, or on the petition of any of the inhabitants of the respective townships order a view, in the manner provided for in the case of roads; and if, on the report of viewers, it shall appear to the court, grand jury, and the commissioners of the county, that such bridge is necessary and would be too expensive for such township or townships, it shall be entered on record as a county bridge."

The bridge in question was built and constructed in 1866, by regular and lawful proceedings, under the 35th Section of the Act of June 13, 1836, P. L. 551, last above quoted, as a county bridge, and it has been so maintained with its approaches, from that date, to the present time.

The bridge and its approaches are a necessary part of the highway, upon which it is located, and from 1866 to the present time, there has necessarily been a divided jurisdiction of this public road and the bridge in question.    The Township of Monroe having the burden of keeping the road in repair, until it was taken over by the State, and the County of Bradford, the burden of keeping the bridge and its approaches, in repair, as provided by the Act of 1836 above referred to.

The language of the Act of April 15, 1903, Section 18 and Section 19, of the Act of May 1, 1905, as well as Section 34 of the Act of May 31, 1911, P. L. 468, clearly shows the purpose and intention of the legislature to take over certain main public roads, including causeways or bridges, drains or water-courses, which may form a part of the road so taken, "and which has been or might prop-

erly be built according to any existing laws by the townships of the Commonwealth," and to exclude from said appropriation, all county bridges located upon said highways.

The purpose that the legislature had in view, was twofold (a) to relieve the township from the burden of keeping up the said highways, (b) to improve the conditions of the highways leading from one county seat to another. The townships were either unwilling or unable, financially, to improve the highways, as demanded by the public, and therefore, the State in its policy or system of improving the highways, took over some of the principal highways, and thereby relieved the township of the Commonwealth, of this burden.

The Commonwealth could, if it had seen fit, have included in its appropriation of roads, under the Sproul Bill, the county bridges located upon the said highways, so taken over, but for reasons satisfactory to the legislature, this was not done. The excluding of the county bridges thereon, and leaving them for the counties to maintain, was not an accident, nor an oversight by the legislature; as the Acts of 1903, 1905 and 1911, contained similar provisions, thereby showing conclusively, the intention of the legislature to relieve the townships of the Commonwealth, of the burden of maintaining the roads so taken, and not to relieve the counties, from the responsibility of taking care of the county bridges upon the same.

This same question has been before the courts in Blair County and Center County. President Judge BALDRIGE, of Blair County, held that the burden of building and maintaining county bridges that were located upon the State highways, under the Act of May 31, 1911, P. L. 468, was upon the counties. This opinion has not been reported so far as we know. The only knowledge we have of it, is from the opinion of the court in the Center County case.

President Judge ORVIS, of Center County, reaches an

opposite conclusion from that of President Judge BALD-RIGE, of Blair County, and holds that the burden of maintaining county bridges, upon said highways, is upon the Commonwealth: Commonwealth, ex rel., Fortney v. Center County Commissioners, 24 Pa. D..R. 266.

The court in the above case, reaches its conclusion, mainly from the general language used in Sections 5, 6, and 11, of said Act of 1911, and reasons against the bad effects that will follow a divided jurisdiction, in maintaining the State highway.    The court also, in this last case, seems to place great weight upon the policy of the State, as disclosed by this act of assembly, in relation to the character of the roads built, and to be maintained.

The attorney general's department, under date of June 2, 1915, has furnished an opinion to the State highway department, instructing that department, that the counties have not been relieved from the burden and duty of maintaining county bridges, located upon State highways, under the Act of May 31, 1911, P. L.. 468.    This opinion is published in the Pennsylvania Highway News, Vol. I, of May-June, 1915, 1 Pa. Dept. Rep. 1299.

We are of the opinion, that the interpretation placed upon said act, by President Judge BALDRIGE of Blair County, and the attorney general's department, is the correct interpretation and application of this act of assembly, approved May 31, 1911, P. L. 468, and this conclusion is irresistible from the language used in Section 34 of the said act, and especially is that so, when you follow the history of the preceding legislation, along the same lines and relating to the same subject.    We are therefore, of the opinion, that it is the duty of Bradford County, to rebuild and reconstruct this county bridge in question.

We agree with the learned court, in the Center County case, that it would be better for the State, to control the State highways, absolutely, and not have a divided jurisdiction, in the maintenance of the same.    This, however,

is a matter for the consideration of the legislature, and not for the courts. The jurisdiction is no more divided, now, than it has been in the past.

And now, to wit: November 27, 1915, in accordance with the foregoing opinion, judgment is entered in this case, for the Commonwealth, and against Bradford County. Bradford County to pay the costs. The unsafe condition of the bridge in question is such, that we regard the exigence of the case such, on account of the public being required to use this bridge when in a dangerous condition, that its rebuilding or repair should be made at once, and we therefore direct, that a peremptory writ of mandamus issue forthwith, requiring the said George N. Bird, Jesse L. Ellsworth and Miles E. Horton, county commissioners of Bradford County, to construct, maintain and keep in repair the bridge known as "Kelloggs' bridge," located upon the State highway, known as Route 17, under the Act of May 31, 1911, between New Albany and Monroeton, Bradford County, Pa., so that the same shall be reasonably safe for public travel, until such time as the same shall be rebuilt by Bradford County, under the Act of February 14, 1907, P. L. 3, in accordance with recommendation of the grand jury of April 20, 1915.

Defendants appealed.

*Error assigned,* among others, was the order of the court.

*Rodney A. Mercur,* for appellants.

*William H. Keller,* First Deputy Attorney General, with him *Francis Shunk Brown,* Attorney General, for Commonwealth of Pennsylvania, intervening appellee.

*J. Roy Lilley* and *William P. Wilson,* for appellees, were not heard.

PER CURIAM, April 17, 1916:

The judgment is affirmed on the opinion of the learned court below.