Heinlein, Exrx., Appellant, *v.* Allegheny County.

Argued March 27, 1953. Before STERN, C. J., STEARNE, JONES, CHIDSEY, MUSMANNO and ARNOLD, JJ. Appeals, Nos. 72 and 73, reargument refused July 20, 1953.

*Paul C. Ruffennach,* with him *Charles F. Dean,* for appellants.

*John R. Bredin,* with him *Dalzell, Pringle, Bredin & Martin,* for appellee.

*Harry F. Stambaugh,* Special Counsel, with him *Phil H. Lewis,* Deputy Attorney General and *Robert E. Woodside,* Attorney General, for Commonwealth of Pennsylvania under Rule 46.

OPINION BY MR. JUSTICE JONES, June 26, 1953:

These appeals are from judgments entered on a directed verdict for the defendant at the trial of survival and wrongful death actions instituted by the plaintiff for the death of her husband. The question for decision is whether the defendant county was responsible for the care and maintenance of the highway bridge whereon the plaintiff's decedent received the injuries resulting in his death. The learned trial judge was of the opinion that the responsibility was the Commonwealth's by virtue of its express statutory adoption of the highway prior to the injury of the decedent. For present purposes, it is to be assumed that the testimony adduced by the plaintiff established that the decedent's fatal injuries were the result of the improper maintenance of the bridge and its roadway. The court en banc denied the plaintiff's motions for a new trial and the judgments from which the plaintiff has appealed were entered on the verdict. The Commonwealth has filed a brief under Rule 46 and participated in the oral argument in this court, contending, as does the appellant, that the county was at the time of the injury in suit, and still is, responsible for the repair and maintenance of the bridge in question and the highway upon it.

The bridge was built by Allegheny County in 1929 as a part of the Ohio River Boulevard and is located in the Borough of Avalon where it spans a ravine and a street named Birmingham Avenue by which name the bridge is generally known. The bridge was erected under an agreement between the county and the borough whereby the county undertook its construction, repair and maintenance. In 1941, the Commonwealth took over the boulevard as a State highway pursuant to the Act of May 19, 1941, P. L. 44, 36 PS §1753-3 et seq., which reads as follows:

"AN ACT

"Establishing certain public roads and streets as a State highway, and providing for their construction, reconstruction and maintenance by the Department of Highways subject to certain terms and conditions.

"The General Assembly of the Commonwealth of Pennsylvania hereby enacts as follows:

"Section 1. The following various sections of public roads shall respectively be adopted by the Commonwealth as a State highway to be constructed, reconstructed and maintained at the expense of the Commonwealth under the provisions of present or future laws governing State highways, except as hereinafter provided: [Then follows a detailed description of the Ohio River Boulevard from a point on California Avenue in the City of Pittsburgh to the dividing line between Allegheny County and Beaver County, being approximately 13.5 miles in length.][1]

---

[1] The description of the Ohio River Boulevard as contained in the Act is as follows: "Beginning at a point in the City of Pittsburgh on California Avenue at its intersection with Island Avenue, thence over California Avenue (Ohio River Boulevard) to the intersection of California Avenue and Ohio River Boulevard, thence by way of Ohio River Boulevard through the City of Pittsburgh, Borough of Bellevue, Avalon Borough, Ben Avon Borough, Ems-

"Section 2. Any portion or portions of the highways as herein described which are located on, or forming part of, any city street shall be taken over for construction, reconstruction and maintenance in accordance with the provisions of present or future laws relating to State highway routes in cities; any portion or portions of the highways as herein described which are located on, or forming a part of, any borough street shall be taken over for construction, reconstruction and maintenance in accordance with the provisions of present or future laws relating to main State highways in boroughs.

"Section 3. The highways established as a State highway under the provisions of this act shall be taken over upon approval of this act.

"APPROVED—The 19th day of May, A.D. 1941."

The answer to the question presented is to be found in the legislative intent expressed in the Act of 1941, supra.

The rule at common law that a bridge is a part of the highway traversing it was long ago declared to be the law of this State. In *Westfield Borough v. Tioga Co.*, 150 Pa. 152, 153, 24 A. 700, this court said that

worth Borough to the dividing line between Emsworth Borough and Kilbuck Township, thence over a county road known as Beaver Road to the dividing line of Kilbuck Township and Glenfield Borough, thence over Beaver Road in Glenfield Borough to a point in Glenfield Borough at the foot of Agnew's Hill where Beaver Road intersects Ohio River Boulevard, thence by way of Ohio River Boulevard through the Boroughs of Glenfield, Haysville, Osborne, Sewickley and Edgeworth to Edgeworth Lane in Edgeworth Borough, thence by way of Edgeworth Lane in Edgeworth Borough to its intersection with Beaver Road in Edgeworth Borough, thence by way of Beaver Road in the Boroughs of Edgeworth and Leetsdale to the dividing line between Allegheny County and Beaver County at the intersection of Beaver Road and State Route No. 641, being approximately 13.5 miles in length."

"At common law such a structure [i.e., a bridge] is part of the public highway . . . .. And such is the law in this state and generally in this country." In accord with the foregoing, the concept was reiterated in *Schlosser v. Manor Township,* 293 Pa. 315, 318, 142 A. 322, in the following language,—"The common law principle that a bridge is necessarily an integral portion of the highway or road crossing it, was early adopted and since invariably followed in this Commonwealth . . . ." See also *Eichenhofer v. Philadelphia,* 248 Pa. 365, 368, 93 A. 1065; *Beaver County v. Central District & Printing Telegraph Company,* 219 Pa. 340, 343, 68 A. 846; *County of Erie v. Commonwealth,* 127 Pa. 197, 207, 17 A. 905; *Penn Township v. Perry County,* 78 Pa. 457, 459; and *Rapho and West Hempfield Townships v. Moore,* 68 Pa. 404, 406.

The extent to which the common law rule has been altered by statute in this State has been principally in respect of the duty of repairing and maintaining the bridges in connection with specific classes of highways. As was said in the *Rapho and West Hempfield Townships* case, supra,—"As a general proposition, but by no means universal, bridges are treated as portions of the highways which cross them, and are to be maintained by the same persons to whom the duty of repairing the highways is committed: Shear. & Red. on Negligence, §248. In this state the duty is statutory, and therefore we must look to the statute for its nature and extent." The idea is succinctly stated in Elliott on Roads and Streets, 3rd. Ed., Vol. 1, §34, p. 42, where, after recognizing that "It cannot . . . always be true that statutes respecting highways extend to and include bridges", it is said that "whether they do or not must depend upon the general tenor of the particular statute and the purposes it was intended to accomplish." We come, then, to a consideration of the intent and purpose of the Act of

1941, supra, which deals exclusively with the Ohio River Boulevard which, as we have seen, is described with particularity throughout the detailed course of its length of 13.5 miles from the City of Pittsburgh through numerous boroughs and a township to the Beaver County line.

By the express terms of the Act of 1941, the Commonwealth, as of the effective date of the Act (May 19, 1941), adopted the Ohio River Boulevard as a State highway to be constructed, reconstructed and maintained *at the expense of the Commonwealth* under the provisions of present or future laws governing State highways. The word "highway" as defined by Sub-section (52) of Section 101 of the Statutory Construction Act of May 28, 1937, P. L. 1019 (46 PS § 601), unquestionably includes the bridges which are a part of a highway. As there defined, a "Highway" is "a way or place of whatever nature open to the use of the public as a matter of right for purposes of vehicular traffic."

Nowhere does the Act of 1941 exclude bridges from the scope of the Commonwealth's duty of maintaining the highway known as the Ohio River Boulevard. It was, of course, within the legislature's power to continue upon the county the duty of maintaining the bridges which were a part of the boulevard when adopted by the Commonwealth as a State highway. In *Commonwealth of Pennsylvania, ex rel. v. Bird*, 253 Pa. 364, 372, 98 A. 648, it was recognized that "The Commonwealth could, if it had seen fit, have included in its appropriation of roads, under the Sproul Bill [Act of May 31, 1911, P. L. 468], the county bridges located upon the said highways, so taken over, but for reasons satisfactory to the legislature, this was not done." What the Sproul Act expressly did, however, was to *exclude* county bridges from the Commonwealth's assumption by that Act of the duty of maintaining the roads and high-

ways covered by the enactment. And, that is what the Act of 1941 with which this case is concerned *did not do*. It does not even contain the word "bridge" or "bridges". There is no decision of this court that has come to our attention which holds that the maintenance of a county bridge is to be divorced from the maintenance of the highway of which it is an integral part where the Act of Assembly, dealing with the related question of the future maintenance of the highway, does not specifically differentiate between the highway and a bridge which it traverses. The general language in Section 1 of the Act of 1941, which the appellant stresses, that the Commonwealth's duty of maintenance should be "under the provisions of present or future laws governing State highways . . ." does not warrant a distinction between the Ohio River Boulevard and one of its bridges, when the Act makes no mention at all of bridges.

Nor is it reasonable to infer from anything contained in the Act of 1941 that, in taking over the Ohio River Boulevard, the legislature intended that the maintenance of the bridges which constitute such a large and important part of the highway should continue to be the charge of the county. The lack of control by the Commonwealth over the whole of this important artery of interstate travel, which would result were the duty of maintaining the bridge left with the county, negatives any such idea. The opinion for the court en banc, after mentioning that the highway parallels the Ohio River on its north side, points out that "The high ground bordering on the river is intersected by a number of ravines over which bridges were built by the County of Allegheny as a part of the completed improvement known as the Ohio River Boulevard." The learned court below then correctly observed that "if the bridges over and upon which the Ohio River Boulevard is constructed were excepted, the Ohio River Boulevard would consist

of a number of separated segments of highways, whereas it is described [by the Act] as one continuous thoroughfare." If the appellant's contention were adopted, it would produce an absurd and unreasonable result which a familiar rule of statutory construction bids us not impute to the legislature as its intent: Statutory Construction Act of 1937, supra, Section 52 (1).

The appellant argues that, inasmuch as the Commonwealth's liability for the construction, reconstruction and maintenance of the Ohio River Boulevard, pursuant to the Act of 1941, was subject to "the provisions of present or future laws governing State highways", the duty of maintaining the Birmingham Avenue Bridge in Avalon Borough was continued upon the county. This argument, the appellant predicates upon the assertion that the policy of the Commonwealth has been to continue responsibility for the maintenance of State highway bridges upon the counties and that express language of assumption is necessary to shift such liability to the Commonwealth. We agree with the learned court below that "The presumption . . . is quite the other way" in the light of the legislative tendency exhibited over the past fifty years.

It is true that, as a result of the general road law of June 13, 1836, P. L. 551, which empowered the various political subdivisions of the Commonwealth "to lay out, open, construct, vacate or abandon highways, streets and bridges," roads and highways thereupon became matters for local concern and responsibility. As noted in *Bell Telephone Company of Pennsylvania v. Lewis, Secretary,* 317 Pa. 387, 391, 177 A. 36, by the Act of 1836, supra, ". . . the Commonwealth . . . [withdrew] from road building and [committed] highways and bridges to its agents [i.e., political subdivisions] for ownership, control, building, maintenance and repair, so that [thenceforth] almost every street, road, highway and

bridge in the Commonwealth was locally owned." However, with the advent of automotive vehicles toward the end of the nineteenth century, it soon became apparent from the demands for better and more adequate highways that the political subdivisions of the Commonwealth (townships most obviously at first) would be financially unable to improve and maintain the highways in a manner made necessary by the ever-growing vehicular traffic. In manifest recognition of that situation, the legislature entered upon a highway program which was a direct reversal of the attitude of the Commonwealth in respect of such responsibility as reflected by the Act of 1836 in practice.

By the Act of April 15, 1903, P. L. 188, the legislature created a State highway department which was authorized to cooperate with the several counties and townships and with boroughs in certain instances in the improvement of the public highways and the maintenance of improved highways. The Act provided for State-aid highways, the improvement and maintenance of which were to be effected by joint action of the State and a county or a township. Section 18 of the Act declared that "The word 'highway,' as used in this act, shall be construed to include any existing causeway or bridge, . . . which may form a part of a road, and which might properly be built, according to existing laws, by the township or townships; but shall not include causeways or bridges which should properly be built by a county . . . or by the State." So far, then, State relief from liability for bridge construction and maintenance was limited to townships only. Section 35 of the Act of 1836 had recognized the probable financial inability of townships in respect of bridge maintenance by providing that where a necessary bridge "would be too expensive for such township . . ., it shall be entered on record as a county bridge."

Then followed the Act of May 1, 1905, P. L. 318, which, after reciting that "It is of great importance to the people of this Commonwealth that the public highways should be systematically improved, and that the several counties and townships should be given the aid and encouragement of the State in the building and maintenance of improved highways", substantially reenacted the Act of 1903, supra, including the above-quoted Section 18 which became Section 19 in the Act of 1905. Both of those Acts, however, were repealed by the Act of May 31, 1911, P. L. 468, known as the Sproul Act. By that Act, the Commonwealth embarked upon a comprehensive undertaking of State-wide highway construction, improvement, maintenance and control. In addition to continuing State-aid highways as authorized by the Act of 1903, the Sproul Act created a new class of highways which it denominated State highways, the burden of which was to rest entirely upon the Commonwealth. The Act further provided for the reorganization and extension of the Department of Highways and took over as State highways specified roads throughout the Commonwealth which were described by courses and termini and given separate State highway route numbers from "One" to "Two Hundred and Ninety-Six" inclusive.

Section 34 of the Sproul Act defined a "highway" and a "State-aid highway" as follows: "The word 'highway,' as used in this act, shall be construed to include any existing causeway or bridge, or any new causeway or bridge, or any drain or watercourse, which may form part of a road, and which has been or might properly be built, according to any existing laws, by the townships of the Commonwealth. A 'State-aid highway,' as the term is used in this act, shall be construed to mean only such highway as is improved with the aid and co-operation of the State with county and township, or with county or township, borough or incorporated town,

either or severally, as the case may be, according to the terms and provisions hereof; but shall not include any causeway or bridge which should properly be built by the county or by the State, under existing laws." Incidentally, the Ohio River Boulevard was not a State-aid highway.

Notwithstanding that the exclusion from State responsibility of a bridge built by a county applied, in terms, *only to a State-aid highway* according to the definition in Section 34 of the Sproul Act, this court held that only bridges built by townships were included in the State's adoption of highways. Thus, in *Commonwealth of Pennsylvania, ex rel. v. Bird,* supra, the opinion for the court below, whereon this court affirmed per curiam, declared that "The language of the Act of April 15, 1903, Section 18 and Section 19, of the Act of May 1, 1905, as well as Section 34 of the Act of May 31, 1911, P. L. 468, clearly shows the purpose and intention of the legislature to take over certain main public roads, including causeways or bridges, drains or water-courses, which may form a part of the road so taken, 'and which has been or might properly be built according to any existing laws by the townships of the Commonwealth,' and to exclude from said appropriation, all county bridges located upon said highways." See also *Commonwealth ex rel. v. Grove,* 261 Pa. 504, 507, 104 A. 732 (1918) ; and *Commonwealth ex rel. v. Lehigh Coal & Navigation Co.,* 285 Pa. 551, 555, 132 A. 705 (1926). The writer of the opinion in the *Bird* case, President Judge MAXWELL of Bradford County, after noting that his conclusion differed diametrically from the result reached by President Judge ORVIS on the same statutory question in *Commonwealth ex rel., Fortney v. Center County Commissioners,* 24 Pa. D.R. 266, said,—"We agree with the learned court, in the Center County case, that it would be better for the State, to control the

State highways, absolutely, and not have a divided jurisdiction, in the maintenance of the same. This, however, is a matter for the consideration of the legislature, and not for the courts." The trend in the Commonwealth's policy toward more and more responsibility for the construction, maintenance and repair of bridges on State highways soon became evident.

By the Act of May 1, 1929, P. L. 1054 (408), the legislature provided that "any county bridges over streams on State highway routes in boroughs, towns and townships may be taken over, at any time after the approval of this act, and all such bridges *shall be taken over* by the Department of Highways *the first day of June, one thousand nine hundred and thirty,* and, when so taken over, shall thereafter be built, rebuilt, repaired, *and maintained* by the Department of Highways *at the expense of the Commonwealth* from moneys in the motor license fund" (Emphasis supplied).

Two years later, the Act of May 21, 1931, P. L. 147, provided "That where any county is responsible for the construction or maintenance of any bridge on a State highway route carrying vehicular traffic over a stream, or *over a stream and the facilities of any public service company, or on a continuation of a State highway route through any borough or incorporated town,* or which is located on a continuation of a State highway route and part of which extends into the municipal limits of a third class city, the county's responsibility shall be assumed by the Commonwealth, except as hereinafter in this act provided. All such bridges shall be taken over by the Department of Highways, and shall be built, rebuilt, repaired, and maintained by the department at the expense of the Commonwealth, but the Commonwealth's responsibility with reference to any bridge located partially within the limits of a third class city shall be limited to fifty (50) per centum of the cost of

rebuilding, repairing, or maintaining, and the remaining fifty (50) per centum of such cost shall be paid to the Commonwealth by the county . . ." (Emphasis supplied). At the next session of the legislature this Act of 1931 was amended by the Act of April 13, 1933, P. L. 30, so as to eliminate the provisions which had placed upon *counties* fifty per centum of the cost of construction and maintenance of certain bridges. Thenceforth, the entire cost was upon the Commonwealth. As to the effect of the Acts of 1929 and 1931, supra, it was said in *Bell Telephone Company of Pennsylvania v. Lewis,* supra, that "The general act by which the Commonwealth took over highways and bridges was the Sproul Act of May 31, 1911, P. L. 468, but the liability for maintenance of bridges continued to rest on the county (Com. v. Bird, 253 Pa. 364), until the acts of 1929 and 1931, P. L. 147, as above mentioned; after June 1, 1931, all responsibility for construction, maintenance and reconstruction rested with the Commonwealth."

The Act of 1931 was further amended by the Act of July 15, 1935, P. L. 1035, which added township bridges and a new section providing for the retention of a bridge by a county under certain conditions. This latter privilege had to be exercised by the application of a county to the Secretary of Highways prior to September 1, 1935, i.e., within a month and a half of the amendatory enactment. It was patently a temporary provision. But, its very necessity in order to give a county the right to retain liability for the maintenance of a bridge on a State highway serves to emphasize the otherwise completely effected divorcement of counties from such responsibility.

In 1937 the Act of 1931 was again amended by adding thereto county and township bridges over *mill races.* And, a final amendment was made by the Act of June 9, 1939, P. L. 321, which, while of no present materiality in

its amendatory feature, shows the statutory law relating to bridge maintenance at the time of the Commonwealth's adoption of the Ohio River Boulevard to have been that "where any county or township is responsible for the construction or maintenance of any bridge on a State highway route carrying vehicular traffic over a stream or mill race, or over a stream or mill race and the facilities of any public service company, or on a continuation of a State highway route through any borough or incorporated town . . . the responsibility of such county or township shall be assumed by the Commonwealth . . . [and] All such bridges shall be taken over by the Department of Highways and shall be built, rebuilt, repaired, [and] maintained . . . at the expense of the Commonwealth."

As to the "future laws governing State highways", all of the pertinent sections of the above-mentioned Acts, except those of 1836 and 1929, were repealed by Section 1101 of the State Highway Law of June 1, 1945, P. L. 1242 (36 PS §670-1101), which was a re-codification and re-enactment of much of the pre-existing legislation. Among other things, it re-enacted the particular amendments of the Sproul Act which had become consolidated in the 1939 amendment of the Act of 1931, supra. The cognate portions of this re-enactment by the Act of 1945, supra, are as follows: "Article VII. Bridges (a) Bridges on State Highways. Section 701. Commonwealth to Be Responsible for Certain Bridges on State Highways.— Where any county or township is responsible for the construction or maintenance of any bridge on a State highway route carrying vehicular traffic over a stream or mill race, or over a stream or mill race and the facilities of any public service company, or on a continuation of a State highway route through any borough or incorporated town, or which is located on a continuation of a State highway route and part of which extends into

the municipal limits of a third class city, the responsibility of such county or township shall be assumed by the Commonwealth, except as hereinafter provided. All such bridges shall be taken over by the department and shall be built, rebuilt, repaired, maintained, and may be lighted by the department at the expense of the Commonwealth . . . ."

We think it is clear from the legislative history respecting the liability for the construction, reconstruction and maintenance of bridges on State highways, as we have hereinbefore reviewed it at length, that the progressive and undeviating policy of the Commonwealth has been to assume more and more of the responsibility for such bridges, first, in relief of townships and, then, of the counties of the State. When, therefore, the Commonwealth takes over a county road as a State highway, unless the Act of adoption expressly continues upon the county the duty of maintaining a bridge or bridges on such road, the presumption is that liability for bridge maintenance is assumed by the Commonwealth. The Act of 1941, relating to the Ohio River Boulevard, did not, as we have seen, make any separation or other mention of bridges although it dealt with the entire length of the boulevard as measured over land and bridges. Nor is there any justification in the appellant's contention that the reference in the Act of 1941, supra, to "present or future laws governing State highways" was intended to continue upon the county liability for the maintenance of the bridges of the boulevard taken over by the Commonwealth as a State highway. The reference to "present or future laws concerning State highways" was in connection with the Commonwealth's assumption of the duty to construct, reconstruct and maintain at the Commonwealth's expense the described highway, which, without specific exclusion, included the highway's bridges.

If there were any need to point to express statutory relief of the county from the duty of maintaining a bridge on the highway taken over by the Commonwealth, we agree with the learned court below that such relief is to be found in the amendments to the Sproul Act which culminated in the amendatory Act of June 9, 1939, P. L. 321, and now carried forward by Section 701 of the Act of 1945, supra. The Birmingham Avenue Bridge on the Ohio River Boulevard in Avalon is "on a continuation of a State highway route through [a] borough or incorporated town". There is no merit in the appellant's contention that the categories of Section 701 of the Act of 1945, supra, are not in the disjunctive and that to qualify as a bridge "on a continuation of a State highway route" the bridge must be over a stream or mill race. That argument ignores the fact that the categories included in the Act of 1939 as well as in Section 701 of the Act of 1945, supra, accumulated from successive amendments of the Sproul Act.

The judgments are affirmed.

---

DISSENTING OPINION BY MR. JUSTICE CHIDSEY:

Firmly believing that the majority opinion has usurped the legislative function, I am obliged to dissent.

This case is governed by the Act of May 19, 1941, P. L. 44, 36 PS §1753-3 et seq., by which the Legislature adopted the Ohio River Boulevard as a State highway for purposes of construction, reconstruction and maintenance. The only problem involved is to ascertain the intent of the Legislature when it used the words ". . . in accordance with the provisions of present or future laws relating to main State highways in boroughs.". It is therefore necessary to determine the "present law" as to bridges which constituted part of a State highway on May 19, 1941, the effective date of the Act.

It is true that at common law a bridge was a part of the highway. However, beginning with the General Road Law of 1836, P. L. 551, and followed by a long sequence of statutory enactments thereafter, the duty of maintaining bridges has been regulated by statute. The abrogation of the common law rule was recognized as early as *Rapho and West Hempfield Townships v. Moore*, 68 Pa. 404, which is quoted in the majority opinion. Despite the dictum quoted in the majority opinion from *Schlosser v. Manor Township*, 293 Pa. 315, 142 A. 322, that case does not rest upon any common law principle that a bridge is part of a highway, but rather upon the following statutory construction (p. 321): "The Keener Bridge, as we have found, was not a county bridge, but a township structure at the time of taking over the Garrett Run Road state aid highway by the state highway department under the Act of 1911, and its status as a township bridge remained until the highway of which it was a part was appropriated by the Commonwealth. By the appropriation that status ceased entirely, and thereafter the supervision of it and the duty of keeping it in repair were transferred from the township to the state highway department, and with that transference, as directed by the Act of 1911, that supervision and duty were taken from the township.". In *Eichenhofer v. Philadelphia*, 248 Pa. 365, 93 A. 1065, cited by the majority, the Court had before it a situation concerning a bridge built and maintained by the City of Philadelphia. No state highway was involved and that case has no bearing on the problem presented in the instant case. All the other cases cited by the majority opinion for the proposition that under the common law a bridge is a part of the highway preceded the passage of the Sproul Act of May 31, 1911, P. L. 468, which will be referred to later, and are for that reason alone inapplicable.

The majority opinion correctly states: "Nowhere does the Act of 1941 exclude bridges from the scope of the Commonwealth's duty of maintaining the highway known as the Ohio River Boulevard.". It could be just as correctly stated that nowhere does the Act of 1941 *include* bridges *within* the scope of the Commonwealth's duty of maintaining the highway known as the Ohio River Boulevard. Since the Act of 1941 makes no mention whatever of bridges, an analysis of the statutes relating to highways and bridges is appropriate to aid in the construction of the words "in accordance with the provisions of present and future laws". The majority opinion concedes that by the Act of 1836 the Commonwealth committed highways and bridges to its political subdivisions for ownership, control, building and maintenance, and points to subsequent legislation as evidence that the Commonwealth has subsequently completely reversed its attitude with respect thereto. In order to test the conclusion of the majority, an analysis of those statutes is necessary.

The Act of April 15, 1903, P. L. 188, created the State Highway Department and provided for State aid highways and specifically defined the term to include existing bridges or causeways which might be properly built by a *township*, but not those which should properly be built by a county or by the State.

The Act of May 1, 1905 reenacted the Act of 1903 and was in turn repealed by the Act of May 31, 1911, P. L. 468 (Sproul Act), which created the classification of State highways in addition to State-aid highways. The title of the Act of 1911 reads, in part, as follows: ". . . providing for the improvement, maintenance and repair of said State Highways solely at the expense of the Commonwealth, and relieving the several townships or counties from any further obligation and expense to improve or maintain the same, and relieving said town-

ships or counties of authority over same; requiring boroughs and incorporated towns to maintain certain State Highways wholly and in part; . . .". Section 6 of the Act provides: "From and after the adoption of this act, all . . . *highways* . . . subject to the provisions hereinafter made . . . shall be . . . built, rebuilt, constructed, repaired, and maintained by and at the sole expense of the Commonwealth. . .". (Emphasis supplied). In Section 34, the Sproul Act provided: "The word 'highway,' as used in this act, shall be construed to include any existing causeway or bridge, or any new causeway or bridge, or any drain or watercourse, which may form part of a road, and which has been or might properly be built, according to any existing laws, by the *townships* of the Commonwealth. . . .". (Emphasis supplied). Thus again, in recognition of the financial burden which would otherwise fall upon townships, the Legislature specifically assumed all liability for *bridges* which had been or might properly be built by a *township*. This assumption of liability was not extended to county bridges and this Court so held in *Commonwealth of Pennsylvania, ex rel. v. Bird,* 253 Pa. 364, 98 A. 648, which was quoted in the majority opinion. The state of the law at this point was that the Commonwealth had assumed liability for maintenance and repair only of township bridges, but not for maintenance and repair of county bridges.

The Act of May 1, 1929, P. L. 1054 (408) expanded the liability of the Commonwealth for maintenance and repair to include "county bridges over streams" on State highways. The liability of the Commonwealth was further expanded by the Act of May 21, 1931, P. L. 147, in which the Legislature imposed upon the Commonwealth the duty of maintaining and repairing bridges for which a county was formerly responsible where the bridge was part of a State highway and carried vehic-

ular traffic over a stream or the facilities of a public service corporation, or on a continuation of a State highway route through any borough or incorporated town. This provision was further amended by the Act of May 13, 1937, P. L. 617, to include county and township bridges over mill races. Thus the state of the law at this point was that the Commonwealth had assumed liability for bridges which formed part of a State highway where those bridges might properly be built by a township or where it carried vehicular traffic over a stream or mill race or the facilities of a public service corporation or where it was a continuation of a State highway through any borough or incorporated town. The portion of the opinion in *Bell Telephone Company of Pennsylvania v. Lewis, Secretary,* 317 Pa. 387, 177 A. 36, quoted by the majority that "The general act by which the Commonwealth took over highways and bridges [in townships] was the Sproul Act of May 31, 1911, P. L. 468, but the liability for maintenance of bridges continued to rest on the county (Com. v. Bird, 253 Pa. 364), until the Acts of 1929 and 1931, P. L. 147, as above mentioned; after June 1, 1931, all responsibility for construction, maintenance and reconstruction rested with the Commonwealth." does not indicate otherwise. The broad language there employed must be read in connection with the facts of the case and the problem presented. The Court was there considering the constitutionality of a presently unrelated provision of the Act of May 21, 1931, supra, and the statement of facts discloses that the bridge there involved passed "over a stream", viz. Beaver Creek, and was therefore directly within the statutory liability of the Commonwealth for maintenance and repair under the Act of 1931. When made under such a factual background the statement ". . . all responsibility for construction, maintenance and reconstruction rested with the Com-

monwealth" cannot have the broad meaning ascribed to it by the majority.

The State Highway Law of June 1, 1945, P. L. 1242, 36 PS §670-101 was principally a recodification of earlier statutes and no change was made in the statutory scheme relating to bridges forming a part of State highways.

We agree with the statement in the majority opinion to the effect that the foregoing legislative history indicates a progressive policy of the Commonwealth to assume more and more of the responsibility for maintenance and repair of bridges constituting a part of State highways. But a consideration of the legislative history as well as the cases also indicates that the extensions of that liability in the past have been invariably made by the Legislature, not by the courts. The long history of legislation from the Act of 1836 to the Act of 1945 also indicates that the progressive expansion of this liability has been a very gradual process and each successive step taken with discriminating care. While we may agree that it would be a wise policy for the Commonwealth to assume liability for maintenance and repair of all bridges forming a part of State highways and thereby relieve all counties and other political subdivisions from this liability, the limitation of the judicial function requires that such policy questions, involving as they do expenditure of the funds of the Commonwealth and additional demands upon its personnel and equipment, must be decided by the Legislature as it always has been done in the past. The Legislature by conducting hearings if necessary can ascertain the probable cost such extension of liability would impose upon the Commonwealth, and all of the other factors which might affect such decision, and with all the pertinent facts at its disposal make whatever provision it deems advisable. Until the Legislature has done so, the words "in accordance with the provisions of present

and future laws" as used in the Act of 1941 must be construed to mean that in taking over the Ohio River Boulevard as a State highway the Legislature did not intend to increase its liability to repair and maintain bridges beyond that established by the prior Acts of Assembly.[1] In the absence of express language of assumption of such liability, the conclusion by the majority is untenable. There is absolutely no basis for the presumption adopted by the majority that when the Commonwealth takes over a county road as a State highway it also assumes liability for bridge maintenance. As was stated in *Hoffman et al. v. Pittsburgh et al.,* 365 Pa. 386, 75 A. 2d 649: " 'It is axiomatic that a statute is never presumed to deprive the state of any prerogative, right or property unless the intention to do so is clearly manifest, either by express terms or necessary implication. . . .' ". There is no such intention either expressed or implied by the Act of 1941.

As to the additional ground relied upon by the majority, i.e. that the bridge in question is "on a continuation of a State highway route" within the meaning of Section 701 of the Act of 1945, supra, it is quite clear

---

[1] The title of the 1941 Act is as follows: "Establishing certain public roads and streets as a State highway, and providing for their construction, reconstruction and maintenance by the Department of Highways *subject to certain terms and conditions.*" (Emphasis supplied). It is to be noted that the establishment of the roads and streets as a State highway is "subject to certain terms and conditions". This qualification of the purpose in the title indicates that the adoption of Ohio River Boulevard as a State highway was not absolute and unqualified. In order that this portion of the title be given effect, the words "in accordance with the provision of present and future laws" in the body of the Act must be construed as leaving undisturbed the duty of the county to maintain bridges other than those as to which the Commonwealth had specifically assumed such liability in prior statutes. Otherwise the above quoted portions of the title and the Act itself are meaningless.

from an examination of the statutory predecessors of Section 701 that "on a continuation of a State highway route" refers to a very different situation from that here involved. Section 10 of the Sproul Act of 1911, as amended by the Act of May 7, 1929, P. L. 1566,[2] and the Act of June 26, 1931, P. L. 1388, reads as follows: "Anything herein contained, or any apportionment of the State into highway districts, shall not be construed as including or in any manner interfering with the roads, streets, and highways in any of the cities, boroughs, or incorporated towns of the Commonwealth: Provided, That where any road, street, *or* highway [or bridge over a stream, within the limits of any borough or in any incorporated town,] shall form a [part or section of] *continuation of* any *of the* State [highway,] *highways,* as herein described, *within the limits of any borough or incorporated towns,* the Department of Highways shall improve or reconstruct [such] *any* section or sections [or bridge over a stream, such width as it may deem advisable,] of such road, street, *or* highway *which have heretofore been maintained by the Department of Highways, to such width as it may deem advisable,* at the expense of the Commonwealth: . . .".

The bridge in question never was a continuation of a State highway. The entire Ohio River Boulevard had been constructed by the County of Allegheny. By the Act of 1941 the Ohio River Boulevard was "adopted" by the Commonwealth. At the time of such *adoption,* the boulevard was a completed county project and the bridge therefore never had been "on a continuation of

---

[2] It is to be noted in passing that it is significant that this amendment discloses that the Legislature believed that it was necessary to insert the words "or bridge over a stream" in order to authorize the Department of Highways to build a bridge and thereby indicated that the word "highway" as used in the original Section 10 of the Sproul Act of 1911 did not include a bridge.

a State highway" within the meaning of the statute.

Since the Commonwealth has never assumed liability for repair and maintenance of the bridge in question, the judgments of the court below entered on a directed verdict for defendant should be reversed and a new trial granted.

Mr. Justice MUSMANNO joins in this dissent.